

CV18907181                              106501301

# IN THE COURT OF COMMON PLEAS
# CUYAHOGA COUNTY, OHIO

Judge:  JOHN D SUTULA

CV 18 907181

Julie Anne Chinnock,
21482 Cromwell Av.
Fairview Park, Ohio 44126, Plaintiff

v.

Navient Corporation,                    **VERIFIED COMPLAINT FOR DECLARATORY**
123 Justison Street                     **JUDGMENT AND INVASION OF PRIVACY**
Wilmington, Delaware 19801,                         **WITH JURY DEMAND**
and
Navient Solutions, LLC,
123 Justison Street
Wilmington, Delaware 19801,
and
Navient Solutions, LLC
4660 Duke Dr.
Mason, Ohio 45040,
and
Navient Student Loan Trust 2014-3
c/o Deutsche Bank Trust Company
60 Wall Street,16th Floor
New York, New York, 10005,
and
The United States
 Department of Education
1350 Euclid Av. #325
Cleveland, Ohio 44115,
and
Alex Rokakis, Esq., Asst. U.S. Atty.
United States Court House
801 West Superior Av. #400
Cleveland, Ohio 44113
and
Acting U.S. Attorney General
Matthew Whitaker
950 Pennsylvania Av N.W.
Washington, D.C. 20530-0001,
Defendants

FILED
2019 NOV 19  P 1:52
CLERK OF COURTS
CUYAHOGA COUNTY

1

**GOVERNMENT EXHIBIT**

**Exhibit A**

NOW COMES Plaintiff Julie Anne Chinnock, of Fairview Park, Ohio, being first duly sworn, who is competent to testify and whose testimony is admissible, and from whose own personal knowledge and belief deposes and says under oath:

1.     Action for Declaratory Judgment. This is an Action for Declaratory Judgment under Ohio Revised Code 2721.01 et seq. filed for the purpose of the Court determining a question of actual controversy between the parties regarding their respective rights and responsibilities regarding certain alleged student loans.

"Declaratory judgments are to be liberally construed and administered, may grant further relief, shall have the effect of a final judgment, and shall be reviewable as such." O.R.C. 2721.02 et. seq. The Ohio Supreme Court's determination whether the granting or denial of declaratory relief is based upon "whether such determination is *reasonable.*" *Belyeu v. Motorists,* 36 Ohio St.2d 35, 37 (1973).

Under the Ohio Declaratory Judgment Act, plaintiff is a person interested under certain alleged student loans who seeks to have the Court determine whether defendants are the owners of such loans as they claim, and if so, whether she is indebted to them under such loans as they claim, by the Court issuing a declaration of rights, statuses, and other legal relations of the parties regarding such loans.

The essence of declaratory relief is to dispose of *uncertainty* in a timely manner in order to prevent ongoing stress, harm, and further injury. Resolving this type of *uncertainty* is at the heart of the declaratory judgment act. *Mid-American v. Heasly,* 113 Ohio St.3d 133, 2007-Ohio-1248.

In this case, the controversy between the parties is simple, actual, and relatively easy to resolve as a matter of law. Defendants claim that they own certain student loans under which plaintiff is indebted to them, and plaintiff denies that defendants own such loans. *That's it!* As a matter of law, defendants must either prove that they own such loans, or not.

2

Defendants Navient Student Trust 2014-3 ["Navient Trust"] and defendant United States Department of Education ["DoDE"] may prove their ownership of such loans by producing "The Three Proofs of Ownership:" the (a) the original promissory notes made payable to them as the original owner; (b) if they were not the original owner, producing the assignment documents assigning the loan from the original owner to subsequent assignee-owners, including them; and (c) producing the recorded chain of title showing them to be the current owner of such loans.

Plaintiff's declaratory judgment action consists of both contract and tort components. A declaratory judgment determination by the Court will terminate the controversy between the parties.

2.      Defendants' Failure to Produce Any of the Documents Required Under the "Three Proofs of Ownership" Rule to Prove Their Ownership of the Alleged Loans.  For over a year, defendants Navient Corporation and Navient Solutions, LLC [collectively "Navient"], acting as agents on behalf of its principals ("lenders") Navient Trust and DoDE, have continually contacted and harassed plaintiff by falsely claiming that she is indebted to such lenders under certain student loans, while continually refusing to produce proof-of-ownership documents for such loans.

Defendants are required under law to either prove that they are the owners of the alleged eight (8) loans they claim to own, or to terminate their harassment of plaintiff and their invasion of her privacy by their false claims. *Both cannot coexist.*

Ohio law has established  the "Three Proofs of Ownership" Rule for defendants to prove they own the loans they claim they own, or not. *In re Boyko Foreclosure Cases (*Judge Christopher Boyko) 2007 WL 3232430 (N.D. Ohio, Oct. 31, 2007); *In re Foreclosure Cases*, No. 07-cv-1007 (N.D. Ohio Nov. 4, 2007 (Judge Kathleen O'Malley); *In re Foreclosure Cases,* 521 F.Supp.2d 650, 655 (S.D. Ohio 2007) (Judge Thomas Rose). ("There is no document in the recorded [chain of title]

3

showing an assignment"); *Foreclosure Cases I*, 2007 U.S. Dist. LEXIS 95673 (Dec. 27, 2007) (Judge Holschuh); *DLJ Mortgage v. Parsons*, 2008 WL 697 400, 2008-Ohio-1177 (2000); *U.S. Bank v. Ibanez*, 17 LCR 202 (Mass. Land Ct. 2009); *Countrywide v. Taylor*, 843 N.Y.S.2d 495 (N.Y. Sup. Ct. 2007); *Federal Home v. Schwartzwald*, 2012-Ohio-5017 (Oct 31, 2012).

In the seminal *Boyko* cases and their progeny, the Court established the "Three Proofs of Ownership" legal procedure by which alleged owners of loans are put to the test to prove that they own the loans they claim they own, or not.

In the lending industry, whether the realty-loan industry or the student-loan industry, these *Boyko* decisions called an end to the loan industry's "take-my-word-for-it-loan-ownership" ploy. Inconceivably, for years courts had simply accepted claims of loan ownership under such scheme in cases where the alleged owner of the loan was not the original lender-owner and thus could not produce (a) the original promissory note made payable to it, (b) any assignment document assigning the loan to it, and/or (c) the recorded chain-of-title verifying it to be the current loan owner.

*Although the Boyko Cases involve realty loans and the instant case involves student loans, the rules of law that control ownership of such loans are the same. A false claim of loan ownership is a false claim of loan ownership.*

Despite plaintiff's repeated demands upon defendants, they have refused to produce any of the documents required under the "Three Proofs of Ownership" Rule in order to prove that they are the current owners of the loans they claim they own.

3. <u>Plaintiff's Discovery Requests Will Put Defendants to the Test to Prove Whether They Own the Loans They Claim They Own, or Not.</u> Defendants have continually refused to produce the documents legally required to prove they own the loans they claim they own and under which they claim plaintiff is indebted to them.

4

Plaintiff's Discovery Requests filed simultaneously with the Complaint in this case will put defendants to the test to show that they can either produce the necessary "Three Proofs of Ownership" to prove they own such loans, or not.

Just as in the *Boyko* cases, the Court will then have all the necessary evidence before it to render a Declaratory Judgment which will terminate the controversy between the parties.

4. <u>This Court Should on Its Own Volition Order Defendants to Prove They Own the Loans They Claim They Own.</u>  In order to determine the Declaratory Judgment, this honorable Court should on its own volition, *just as did Judge Boyko,* order defendants to produce the documents required under the "Three Proofs of Ownership" Rule in order to prove they own the loans they claim they own, in order to justify their continuous demands upon plaintiff to pay such loans, or not.

5. <u>Action for Invasion of Privacy.</u> Plaintiff also contends that defendants' continuing tormenting harassment and intimidation of her (1) by their false claims that they own the eight (8) loans under which they claim plaintiff is indebted to them while refusing to produce documentation proving they own such loans, and (2) their threats to ruin plaintiff's unblemished credit record if she does not start paying such loans in December 2018, collectively constitutes the "wrongful intrusion into plaintiff's private affairs in such a manner as to outrage or cause mental suffering, shame, or humiliation to a person of ordinary sensibilities." [See para 14 herein]. *Housh v. Peth,* 165 Ohio St. 35, 39 (1956).

Black letter law characterizes the *Housh* type of invasion of privacy as an "unreasonable intrusion upon the seclusion of another." Second Restatement of Torts, sec 652A(2)(a). Black letter law also characterizes such right of privacy as "the right to be let alone," which is especially applicable in the case at bar.  62A Am.

5

Jur.2d 600, Privacy sec 1; *Mitnaul v. Fairmount,* 149 Ohio App. 3d 769, 2002-Ohio-5833 (Cuyahoga App 2002).

Defendants' actions have caused, and unless enjoined will continue to cause, plaintiff to suffer great mental pain and suffering, uncertainty, worry, anguish, stress, shame, and humiliation, all of which is "highly offensive to a reasonable person" and an invasion of privacy. 62A Am. Jur.2d 624 & 630 Privacy, sec 29 & 34.

Plaintiff seeks a Secured Protection Order or Secured Restraining Order preventing defendants from continuing such misbehavior that "would [continue to] produce great or irreparable injury to the plaintiff." See Paragraph 14 herein.

6.      Plaintiff's Ohio Domicile.  Plaintiff Julie Anne Chinnock ("plaintiff") is a 49-year-old medical professional who has been domiciled in Ohio all her life, with Ohio being both her *domicile of birth and domicile of choice,* as well as her *permanent residence.* Plaintiff was born and raised and has lived in Ohio as her domicile all her life, presently at 21482 Cromwell Av., Fairview Park, Ohio 44126.

"A 'domicile of origin' is acquired by every person at birth and continues until replaced by the acquisition of another domicile." 25 Am. Jur.2d 138, Domicile, sec 5. "To effectuate a change in domicile, the law requires that both residency and the intent to sustain that residency coexist. No change of domicile will result in the absence of one of these elements." 25 Am. Jur.2d Domicile, sec 17.

"A domicile continues until another is acquired." 28 C.J.S. 76, Domicile, sec 41. "An established domicile is not lost merely by temporary absence from it, or temporary residence elsewhere, *however long continued*, as long as the person who leaves has the intention of returning." 28 C.J.S. 78 Domicile, sec 42. "Domicile is largely a question of intention." 28 C.J.S. 44 & 56, Domicile, secs 2 & 15.

Plaintiff has never had the intention to abandon Ohio as her domicile. *"The question of domicile is primarily a matter of intent."* Cleveland v. Surely, 51 Ohio

6

App.3d 302, 304 (Cuyahoga App. 1989). "[A person's] domicile is the permanent legal resident that he intends to use for an indefinite or unlimited period, and to which, when absent, he intends to return." Black's Law Dictionary. (5th Ed. 1979, 435). *Martinez v. Bynum*, 461 U.S. 321, 331 (1984) A person's domicile . . . is a person's 'pre-eminent headquarters.'" *Williamson v. Osenton,* 232 U.S. 619, 625 (1914). The burden of proving a change of domicile is on the person alleging it. *Indian Hill v Atkins,* 90 N.E.2D 161 (Ohio App. 1949); 36 Ohio Jur.3d Domicile, 1.

"A domicile of origin or choice is presumed to continue until it is shown to have changed. There is a presumption against a change of domicile or legal residence, and a domicile established or acquired continues until it is superseded by a new one." 25 Am. Jur.2d 172 Domicile, sec 55.

A person who has gained a domicile is never held to have lost it by being absent, when the absence has been accompanied by the intention of returning to it. *In re Hutson's Estate,* 165 Ohio St. 115, 119 (1956).

Persons having a permanent abode at a fixed place may retain that abode as a domicile even though they are frequently absent for long periods of time. *Spires v. Spires,* 35 Ohio Op.2d 197, 200-202 (1966). ["Mere absence can never, by itself, divest domicile, no matter how long such absence may continue. The absentee, whether he wandered from place to place for pleasure or business, may continue this absence for years, but until a new domicile was acquired, the old remains."].

7. Plaintiff's Permanent Ohio Residence. *Plaintiff's Ohio domicile also is her permanent Ohio residence. "A person may have more than one residence although he can have only one domicile."* 25 Am.Jur.2d 171, Domicile, sec 54; 28 C.J.S. 47, Domicile, sec 5; *Grant v. Jones,* 39 Ohio St. 506, 525 (1883); *Klink v. Eyrich,* 157 Ohio St. 338, 342 (1952) (same); Cincinnati v. Spaeth, 24 N.E.3d 1138, 1143 (2004) (same); *Eastman v. Michigan,* 30 F.3d 670, 673 (6th Cir. 1994) (same);

7

*Roy v. Ohio,* 2009-Ohio-5808, para 6 (Ohio App. 2009). (same); 25 Am. Jur.2d 137 137, sec 3; 36 Ohio Jurisp.3d sec 4 (1982).

"The case law, statutes, and rules are in accord that the intention of a person is a significant factor in determining where he or she legally resides." *Prouse v. Dimarco,* 116 Ohio St.3d 167, 170 [2007]; *Barth v. Barth,* 113 Ohio St. 3d 27, paras 12-16 (2007)

The term "resident" is defined in *Webster's Ninth New Collegiate Dictionary* (1990) 1003 as "living in a place for some length of time." "The term 'residence' imports having merely an abode at a particular place, which may be one of several places where one is physically present from time to time." 25 Am. Jur.2d 140, Domicile, sec 8.

Presently, plaintiff maintains a temporary residence outside Ohio for the option of being employed as a medical independent contractor. Plaintiff's *temporary residence* is located at 928 North 90th St., Seattle, Washington 98103.

8.  Navient Corporation and Navient Solutions, LLC [collectively "Navient"]. Navient consists of a pair of for-profit businesses acting as loan servicing and bill-collection agencies for student loan lenders, including defendants.

There are 44 million student-loan borrowers in the United States who collectively owe more than $1.5 trillion, with the average student in the Class of 2017 owing almost $40,000 in student loan debt.

Ohio is rated the 45th least affordable state for college. Over a *million* Ohioans have student loan debt of $57.61 *billion* in federal student loans as of 2016. Sixty-five percent of Ohio college graduates graduate from college with student debt. More than 687,000 Ohioans have complained to the Federal Consumer Financial Protection Bureau ("CFPB") about student loan debt collectors and servicers, and such complaints by Ohioans have increased 78% between mid-2016 and mid-2017.

*The dangerous and detrimental impact of Navient's predatory activities upon Ohio and over a million Ohio citizens with student loan debt of $57.61 billion as of 2016 cannot be overemphasized.*

Navient manages nearly *$300 billion* in student debt owed by more than *12 million* student loan debtors throughout Ohio and the United States, with offices located in Cincinnati, Ohio.  Navient engages in *154 Million* communications with student loan debtors annually across Ohio and the nation. The company was formed in 2014 by the split of government agency Sallie Mae into two distinct entities, Sallie Mae Bank and Navient. Navient funds most of its operation by manufacturing student loan asset-backed securities, bundling loans and selling them to investors as "serialized trusts," the extremely risky type of financial instruments which experts say caused the United States Great Recession of 2008.

Navient Solutions, LLC is registered with the Ohio Secretary of State as being on active status as a foreign limited liability company since May 1, 2014 with an expiration date of May 13, 2019.

Navient has a proven reputation for its predatory lending and collection practices. A 2014 Consumers Finance Protection Bureau Report found Navient's illegal loan servicing practices to include (1) **attempts to collect debts not owned by it;** (2) **unfounded negative threats (i.e. damage to borrower's credit)**, and (3) failing to correctly apply payments, among other predatory practices. *These first two predatory practices exist in the instant case.* Policy Matters Ohio Report, "Student Borrowers: Prey for Predatory Loan Services," Dec. 26, 2017 (An Official Publication of the State of Ohio).

In 2017, Navient was the most complained-about student loan company in all 50 states. The Consumer Finance Protection Bureau filed suit against Navient in 2017 for Navient "cheating borrowers." Updated litigation information will be

provided to the Court in due course.

Lenders who make fraudulent claims of ownership are subject to sanctions. *Binding case law mandates that it constitutes actionable fraud for any party to attempt to collect monies for loans which they cannot prove they own.* Courts have imposed sanctions of $400,000 in cases where parties and attorneys misrepresented to the trial court that they are the owners of promissory notes and assignment documents that evidence loans of which they were *not* the owner. *Nosek v. Ameriquest,* U.S. Massachusetts Bankruptcy Court, Case No. 02-46025 (April 25, 2008), citing the *Boyko Foreclosure Cases.*

9.Defendant Navient Student Loan Trust 2014-3 ("Navient Trust").

Defendant Navient Trust is a "serialized trust" that holds assets for investors, primarily student loans not owned by the lender, but loans assigned to the current owner. The Navient Student Loan Trust 2014-3 ["Navient Loan Trust"] appears to be one of a dozen or more Delaware statutory trusts (i.e. National Collegiate Student Loan Trusts) ("National Collegiate Trust") that own more than 800,000 student loans totaling $12 billion in student loans.

From January 2014 to December 2016, Navient was named as a defendant in 530 federal lawsuits. Navient was fined $97 million by the United States Justice Department in 2014 for illegally charging students excessive interest rates. In May, 2015 the United Justice Department announced that nearly 78,000 members of the U.S. military would be reimbursed by Navient under a $60 million consent decree with Navient, because it had charged illegal excess interest on student loans.

On Sept 18, 2017 National Collegiate Trusts entered into a consent settlement with the CFPB filed in the U. S. District Court in Delaware [Case #1:17-cv-01323] in which *it agreed to pay nearly $19 million in penalties and borrower refunds because the trusts "sued consumers for student loans they couldn't prove were owed and filed*

*false and misleading affidavits in courts across the country." "Over 2,000 collection lawsuits were filed on behalf of the trusts in violation of consumer financial protection laws that <u>prevent consumers from having to pay debts that they do not legally owe."</u>*

*The sordid litigation history of Navient and National Collegiate Trusts are highly relevant herein because they constitute uncontroverted evidence of the determinative issue in this case, verifying that defendants have engaged in student loan predatory practices attempting to collect student loans they do not own.*

Navient Trust claims that it owns six student loans under which plaintiff is indebted to it: #1-04 Direct Loan ($21,000); (2) #1-06 DL Consolidated ($3,000); (3) #1-07 DL Consolidate ($3,000); (4) #1-10 Direct Loan ($21,000); (5) #1-13 Direct Loan ($21,000); and (6) #1-14 Direct Grad Plus Loan ($21,000). Plaintiff contends that the Navient Trust does not own these loans and she is not indebted to them.

Plaintiff has demanded that the Navient Trust produce the documentation ("The Three Proofs of Ownership") required to prove that it is the owner of the loans it claims to own, but it has failed and refused to produce any of the documents required under the *Boyko Foreclosure Cases*.

10. <u>Defendant United States Department of Education ("DoED").</u> DoED established the Student Loan Marketing Association ("Sallie Mae") to support the student loan program under the Higher Education Act of 1965. In 2004 Sallie Mae was privatized and became a privatized for-profit company. In 2014, Sallie Mae split into two seperate for-profit businesses, Sallie Mae Bank and Navient. Thus, since 2014 the DoEd's student loan program has been run by a pair of private-for-profit companies – Sallie Mae Bank and Navient.

DoED is a department of the United States government that operates school programs serving *55 million students in Ohio and nationwide attending 134,000 schools in Ohio and nationwide.* The DoEd employs thousands of staff employees in

11

the nation's capital and in 10 regional offices around the country, including Cleveland, Ohio.

DoED claims that it owns two student loans under which plaintiff is indebted to it: (1) #1-07 Consolidation Loan ($99,000); and (2) #1-08 Consolidation Loan ($62,000). Plaintiff contends that the DoED does not own these loans and that she is not indebted to it under them.

Plaintiff has demanded that DoEd produce the documentation ("The Three Proofs of Ownership") required to prove that it is the owner of the loans it claims it owns, but DoEd has failed and refused to produce any of the required documents under the *Boyko Foreclosure Cases*.

11. <u>General [Personal] Jurisdiction and Specific [Personal] Jurisdiction.</u>
"General jurisdiction refers to jurisdiction to adjudicate claims that do not arise from the defendant's contacts with the forum state." <u>Moore's Federal Manual</u> p 108-43, sec 108.40. "A state exercises general personal jurisdiction over a defendant in a suit not arising out of or related to the defendant's contacts with the forum ." *Helicopteros v. Hall*, 466 U.S. 408, 414, note 9 (1984*). "By contrast, specific jurisdiction is jurisdiction to adjudicate claims arising from the defendant's contacts with the forum state."* <u>Moore's Federal Manual</u> p 108-43, sec 108.40. "When a state exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum, the state is exercising 'specific jurisdiction' over the defendant." Id. note 8. ***Specific personal jurisdiction exists in this case.***

The United States Supreme Court's rule of law mandates that "specific jurisdiction requires a showing by the plaintiff that: (1) the nonresident defendant has purposefully established significant (i.e., not "random, fortuitous or attenuated") contact with the foreign state; and (2) the plaintiff's cause of action arises out of or is related to the defendant's forum contacts. " <u>Moore's Federal Manual</u>, p 108-62(4),

sec 108.42. *Columbus v. Cee,* 75 Ohio App.3d 559, 563-566 (Columbus App. 1992).

*"Contacts" include "acts performed outside the forum state that had an effect within the forum"* as well as "acts performed within the forum state." Bilayer, "How Contacts Count," 1980 Supreme Court Review 77, 88. The word "transact" means "to prosecute negotiations; to carry on business; *to have dealings."* Black's Law Dictionary, (5th Ed. 1979)1341.

The essence of specific personal jurisdiction is declared by the United States Supreme Court in *Burger King v. Rudzewicz,* 471 U.S. 462, 474-476 (1984):

> "[Specific personal jurisdiction arises where there is] some act by which the defendant purposefully avails himself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws . . . and ensuring that a defendant will not be hauled into a jurisdiction solely as a result of 'random, fortuitous, or attenuated' contacts. Jurisdiction is proper where the contacts proximately result from actions by the defendant that create a 'substantial connection' with the forum state. Thus, where the defendant deliberately has engaged in significant activities within a state, **or has created 'continuing obligations between himself and residents of the forum**, he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by 'the benefits and protections' of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well. Jurisdiction in these circumstances may not be avoided merely because the defendant did not physically enter the forum state." [Emphasis added]

Plaintiff need only make a prima facia case of jurisdiction. *American Greetings v. Cohn,* 839 F.2d 1164, 1169 (6th Cir. 1988) (burden is "relatively slight").

Although a single act can constitute "minimum contacts," *McGee v. International Life*, 355 U.S. 220 (1957), in the instant case there exists a series of hundreds upon hundreds of contacts, resulting in almost a hundred "continuing obligations" [i.e., loan contracts]. [See para 12 herein].

*Specific personal jurisdiction exists in this case.*

13

12. Jurisdiction and Venue. The Cuyahoga County Common Pleas Court has specific personal jurisdiction over the claims in this case under Ohio's long-arm statute, O.R.C. 2307.382 as follows:

(A)  A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:

(1) transacting any business in this state;

(2) contracting to supply services in this state;

(3)  causing torturous injury by an act in this state

(4) causing tortious injury in this state by an act outside this state if he regularly does or solicits business, or engages in any other persistent course of conduct in this state; and

(6) causing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured thereby in this state.

Ohio Civil Rule 4.3(A) grants authority for service of process outside the state. The Court has venue in this case under Civ. Rule 3(B)(3) because defendants conducted activity in this county that gives rise to the claims for relief.

13.  Specific Personal Jurisdiction Exists in the Instant Case Because of Defendants' Series of Ohio Contacts. *Over a period of three decades, plaintiff obtained a series of student loans (almost 100) from student loan lenders, including defendants, in order to finance her extensive medical education.*

The personal contacts in Ohio by defendants and their agents with plaintiff consisted of a multi-step loan process consisting of (1) lenders' solicitation of plaintiff in Ohio regarding loan transactions, (2) lenders communications in Ohio with plaintiff regarding loan applications, (3) lenders' communications in Ohio with plaintiff regarding her collection and transmittal of employment and financial data for loan, (4) lenders' negotiation communications in Ohio with plaintiff, (5) lenders'

communications in Ohio with plaintiff regarding finalization of loan terms between the parties, (6) lender transmitting loan approvals into Ohio to plaintiff, (7) lenders' communications in Ohio regarding plaintiff's acceptance of loans, (8) lenders' communications in Ohio regarding the execution of the loan documents, (9) lenders' communications in Ohio regarding execution in Ohio of promissory notes, (10) lenders' disbursement of funds to educational institutions in Ohio, (11) monthly loan payments in Ohio on loans, (12) lenders' communications in Ohio regarding their corrections of their regarding payments,   and (13) lenders' receipt in Ohio of plaintiff's lump sum payoff. The greater part of these loan services was performed in Ohio by the loan lenders and their agents, with lenders services performed for plaintiff in Ohio regarding almost one hundred loans over thirty years.

The personal contacts in Ohio between the parties consisted of communications between and among the lenders, their agents, and plaintiff. Such personal contacts between the parties were conducted by telephone, fax, electronically, private delivery services, and United States mails. *Neal v. Savage,* 270 F.3d 328, 331 (6th Cir. 2001). (Defendant subject to personal jurisdiction in Tennessee by communicating with plaintiffs in Tennessee by phone and fax, and those communications were the basis of the suit). "It is an inescapable fact of modern business life that much business activity will be transacted by remote communication methods." Moore's Federal Practice3d p 108-66, sec 108.42[3][ a].

*Over the period of these loans, the lenders and their agents initiated and engaged in literally hundreds upon hundreds of personal contacts in Ohio involving almost one hundred loans, with the parties engaging in this loan process.*

During the period of these loans, plaintiff repaid a total of approximately $77,000 in monthly payments on her loans. Additionally, in July 2017 plaintiff paid off her loans in the sum of approximately $190,000. Not a single delinquency was

ever incurred by plaintiff on her student loans.

14. Navient's Threat to Ruin Plaintiff's Credit Rating. Secured Protective Order or Secured Restraining Order . Plaintiff paid off her student loans in July 2017 in the sum of approximately $190,000. About a year later, in August 2018, however, agent Navient claimed to her that she owed eight (8) additional loans totaling several hundred thousand dollars to a pair of its principals. (See paras 8 and 10 herein.)

Plaintiff, being aware of Navient's public reputation and litigation for engaging in predatory lending practices attempting to collect loans not owned by its principals (see para 8 herein), demanded that it provide documentary evidence to her proving that its lenders owned such loans and that she was indebted to them under such loans. In response, Navient refused to produce such documentation proving that their principals own such loans, and recently demanded that plaintiff begin making monthly payments of approximately $2,100 in December, 2018 on such loans.

Navient advised plaintiff that if she did not begin making the payments as demanded, *it would report her to the credit agencies and have her credit ruined.* This threat is one of the illegal predatory practices Navient was been found guilty of in the 2014 Consumers Finance Protection Bureau Report. (See para 8 herein). *Plaintiff has an unblemished credit record.*

In a good-faith attempt to resolve this dilemma, on Oct 22, 2018 plaintiff's counsel conferred with defendants' counsel, proposing that plaintiff would begin making payments as per Navient's demands in the amounts and on the dates specified, with such payments being paid to the Clerk of Court to be held in trust until a final order is rendered by a court of final appellate jurisdiction regarding ownership of the eight loans in dispute. On Oct 30, 2018 Navient's counsel rejected such temporary resolution because "Navient [is] unable to modify Ms. Chinnock's payment terms."

16

*No party can be prejudiced by this Court ordering a Secured Protective Order or Secured Restraining Order. If plaintiff prevails in this action, the funds she paid into the Clerk's Office will be returned to her. If defendants prevail in this action, the funds she paid into the Clerk's Office will be paid to them.*

`` Upon this basis, plaintiff simultaneously files herewith a companion Motion for Secured Protective Order or Secured Restraining Order, ordering that on or about Dec 27, 2018 plaintiff shall pay to the Cuyahoga County Clerk of Court the sum of $2,100 and additional sums of $2,100 each month thereafter on or before the 27th day of each month, to be held in trust until a final order is rendered by the final court of appellate jurisdiction in Ohio regarding ownership of the eight loans in dispute.

Additionally, defendants must be ordered to refrain from notifying any credit reporting agency that plaintiff is delinquent in making payments on any of the eight disputed loans in the case at bar until the ownership of such loans is determined by the final court of appellate jurisdiction in Ohio regarding ownership of the eight loans in dispute, because such false reporting by defendants before a decision by the Court "would produce great or irreparable injury to the plaintiff."

15. <u>Prior Decision Not on the Merits; Res Judicata and Collateral Estoppel Inapplicable.</u> The parties were involved in prior litigation regarding these student loans that was decided *other than on the merits*, and thus res judicata and collateral is inapplicable in the instant case. U.S. District Court, N.D. Ohio, Case 1:18-cv-01009. *Grava v. Parkman,* 73 Ohio St.3d 379, para 1 and p 2, para 2, 1995-Ohio-331 (1995); *Kosinski v. Commissioner*, 541 F.3d 671, 675 (6th Cir. 2008)["The prior proceeding must have resulted in a final judgment *on the merits."];* 63 Ohio Jur.3d 207 and 178 Judgments, sec 401 and 378 ["It is a fundamental requisite of the doctrine of res judicata that the prior judgment must be a final determination of the rights of the parties *upon the merits.*"]; ["To successfully assert collateral estoppel, a party must

17

prove that there was a final judgment *on the merits* in the previous case."]; 46 Am. Jur.2d 821 & 838 & 882 Judgements, secs 453 & 468 & 519 ["Res judicata [requires that] there must have been a final judgment *on the merits.* "]; ["Collateral estoppel [requires that] the prior adjudication resulted in a final judgment *on the merits.")* *["Res judicata and collateral estoppel require a final judgment on the merits.*"]

16. <u>Plaintiff's Injuries</u>. As a result of Defendant's wrongful acts specified herein, plaintiff has sustained and will continue to sustain great and irreparable harm in that she has suffered great mental and physical harm and has had her credit rating substantially impaired by defendants' wrongful actions.

Plaintiff cannot be fully compensated in damages, and is without an adequate remedy at law because the exact amount of damage she is sustaining and will continue to sustain will be difficult to determine, and the only proper remedy is a declaratory judgment ordering that the disputed loans are invalid as they relate to plaintiff in any manner and that she is not indebted to defendants on any of such alleged contracts in any amount whatsoever.

17. <u>Judicial Determination of Loan Ownership Necessary to Resolve Controversy.</u> A judicial determination is necessary and appropriate at this time in order that Plaintiff may ascertain her rights and duties under any loans alleged to be in effect between the parties, so that plaintiff will not have the burden of continuing to respond to defendant's wrongful demands and will not be faced with a demand or lawsuit in the future seeking collection of any sums from plaintiff.

18. <u>Jury Demand.</u>  Plaintiff demands a trial by jury on all claims so triable.

WHEREFORE, Plaintiff prays that this honorable Court enter a Declaratory Judgment ordering that:

A. The United States Department of Education is unable to prove under the "Three Proofs of Ownership" Rule that it is the owner of the loans it claimed it owns in this case. Thus, the United States Department of Education is not the owner of the following loans: (1) #1-07 Consolidation Loan in the approximate sum of $99,000; and/or (2) #1-08 Consolidation Loan in the approximate sum of $62,000, and Julie Chinnock is not indebted to it under such loans.

B. The Navient Student Trust 2014-3 is unable to prove under the "Three Proofs of Ownership" Rule that it is the owner of the loans it claimed it owns in this case. Thus, the Navient Student Trust 2014-3 is not the owner of the following loans: #1-04 Direct Loan  in the approximate sum of $21,000; (2) #1-06 DL Consolidated in the approximate sum of $3,000; (3) #1-07 DL Consolidate  in the approximate sum of $3,000; (4) #1-10 Direct Loan  in the approximate sum of $21,000; (5) #1-13 Direct Loan in the approximate sum of $21,000; and/or  (6) #1-14 Direct Grad Plus Loan  in the approximate sum of $21,000, and Julie Anne Chinnock is not indebted to it under such loans.

C. Judgment is rendered in favor of plaintiff Julie Anne Chinnock and against defendants Navient Corporation, Navient Solutions, LLC, and the Navient Student Loan Trust 2014-3 for damages incurred by plaintiff for invasion of privacy in the sum of $25,000 against each defendant plus costs and reasonable attorney's fees.

D. This Court enters a Permanent Injunction enjoining all defendants from (a) continuing to claim that plaintiff is indebted to them under the alleged loans in this case, (b) continuing to harass plaintiff regarding such loans, and (c) continuing to wrongfully damage her credit by providing false information to any credit agencies regarding any such alleged loans.

And further for such other relief the Court deems to be appropriate.

**FURTHER AFFIANT SAYETH NAUGHT.**

_____
Julie Anne Chinnock

## JURAT

Julie Anne Chinnock, of Fairview Park, Ohio came before me, a Notary Public in and for the State of Ohio, on the 6th day of November 2018 in Cleveland, Ohio and executed this document of her own free act and will.

_____
Notary Public
Expires 10|26|201*



## SERVICE

William F. Chinnock, Esq. Counsel for Plaintiff Julie Anne Chinnock, verifies that on the 20 day of 2018 he authorized and directed the Clerk of the Cuyahoga County Common Pleas Court to serve all defendants with a copy of this document.

_____
William F. Chinnock, Esq, #10762
8238 Sugarloaf Road
Boulder, Colorado 80302
720-504-6655
judgewfc@aol.com



FILED

Common Pleas Court of Cuyahoga County, Ohio

**DESIGNATION FORM TO BE USED TO INDICATE THE CLASSIFICATION OF THE CAUSE**

JULIE ANNE CHINNOCK          2018 NOV 19 P 1:51

Plaintiff          CLERK OF COURTS          Judge:  JOHN D SUTULA

Vs.          CUYAHOGA COUNTY          CV 18 907181

NAVIENT CORPORATION, ET AL

Defendant

---

Has this case been previously filed and dismissed? Yes ☒ No ☐

Case #: U.S.# 1:18-CV-01009    Judge: GWIN

Is this case related to any new cases now pending or previously filed? Yes ☐ No ☒

Case #: _____    Judge: _____

---

**CIVIL CLASSIFICATIONS: Place an (X) In ONE Classification Only.**

**Professional Torts:**
☐ 1311 Medical Malpractice
☐ 1315 Dental Malpractice
☐ 1316 Optometric Malpractice
☐ 1317 Chiropractic Malpractice
☐ 1312 Legal Malpractice
☐ 1313 Other Malpractice

**Product Liability:**
☐ 1330 Product Liability

**Other Torts:**
☐ 1310 Motor Vehicle Accident
☐ 1314 Consumer Action
☒ 1350 Misc. Tort

**Workers Compensation:**
☐ 1550 Workers Compensation
☐ 1531 Workers Comp. Asbestos

**Foreclosures:**
☐ Utilize Separate Foreclosure Designation Form

**Commercial Docket:**
☐ 1386 Commercial Docket
☐ 1387 Commercial Docket with Foreclosure

**Administrative Appeals:**
☐ 1540 Employment Services
☐ 1551 Other

**Other Civil:**
☐ 1500 Replevin/Attachment
☐ 1382 Business Contract
☐ 1384 Real Estate Contract
☐ 1388 Consumer Debt
☐ 1390 Cognovit
☐ 1391 Other Contacts
☐ 1490 Foreign Judgment
☐ 1491 Stalking Civil Protection Order
☒ 1501 Misc. Other
☐ 1502 Petition to Contest Adam Walsh Act
☐ 1503 Certificate of Qualification for Employment

---

**Amount of Controversy:**
☒ None Stated
☐ Less than $25,000
☐ Prayer Amount _____

**Parties have previously attempted one of the following prior to filing:**
☐ Arbitration
☐ Early Neutral Evaluation
☐ Mediation
☒ None

---

*I certify that to the best of my knowledge the within case is not related to any now pending or previously filed, expect as noted above.*

Firm Name (Print or type)
WILLIAM F. CHINNOCK

Address
8238 SUGARLOAF ROAD

Address
BOULDER, CO 80302

Phone 720-504-6655

Attorney of Record (Print or Type)
WILLIAM F. CHINNOCK

Supreme Court # 10762

Email Address
JUDGEWFC @ AOL.COM

Signature