1                    UNITED STATES DISTRICT COURT
                       NORTHERN DISTRICT OF OHIO
2                          EASTERN DIVISION

3      ------------------------------X
       JULIE ANNE CHINNOCK,          :  Case No. 1:18-cv-02935
4                                    :  Cleveland, Ohio
                   Plaintiff,        :
5                                    :
           v.                        :  Friday, April 12, 2019
6                                    :  12:17 p.m.
       NAVIENT CORPORATION, et       :
7      al.,                          :
                                     :
8              Defendants.           :
       ------------------------------X
9

10

11              TRANSCRIPT OF HEARING PROCEEDINGS

12            BEFORE THE HONORABLE JAMES S. GWIN

13              UNITED STATES MAGISTRATE JUDGE

14

15

16
       Court Reporter:           Donnalee Cotone, RMR, CRR, CRC
17                               Realtime Systems Administrator
                                 United States District Court
18                               801 West Superior Avenue
                                 Court Reporters 7-189
19                               Cleveland, Ohio 44113
                                 216-357-7078
20                               donnalee_cotone@ohnd.uscourts.gov

21

22

23

24     Proceedings recorded by mechanical stenography, transcript

25     produced by computer-aided transcription.

1    APPEARANCES:

2

3         On behalf of Plaintiff Julie Anne Chinnock:

4              **WILLIAM F. CHINNOCK, ESQ.**
               8238 Sugarloaf Road
5              Boulder, Colorado 80302
               720-504-6655
6              Judgewfc@aol.com

7

         On behalf of Defendants Navient Corporation, Navient
8        Solutions, LLC, Navient Student Loan Trust 2014-3:

9              **BRANDEN P. MOORE, ESQ.**
               260 Forbes Avenue
10             901 East Cary Street
               Pittsburgh, Pennsylvania 15222
11             412-667-7908
               bmoore@mcguirewoods.com

12

13        On behalf of Defendants Department of Education,
          Assistant U.S. Attorney, Acting U.S. Attorney
14        General:

15             **ALEX ROKAKIS, ESQ.**
               801 West Superior Avenue
16             Suite 400
               Cleveland, Ohio 44113
17             216-622-3850
               alex.rokakis@usdoj.gov

18

19

     ALSO PRESENT:        Julie Anne Chinnock
20

21

22

23

24

25

1                        **I N D E X**

2                                                        **PAGE**

3    APPEARANCES:.....................................   2

4
     DIRECT EXAMINATION OF JULIE ANNE CHINNOCK .........  11
5    BY MR. CHINNOCK

6    CROSS-EXAMINATION OF JULIE ANNE CHINNOCK...........  14
     BY MR. MOORE
7
     REDIRECT EXAMINATION OF JULIE ANNE CHINNOCK........  22
8    BY MR. CHINNOCK

9    CROSS-EXAMINATION OF JULIE ANNE CHINNOCK...........  24
     BY MR. ROKAKIS
10
     DIRECT EXAMINATION OF ANDREW REINHART..............  29
11   BY MR. MOORE

12   CROSS-EXAMINATION OF ANDREW REINHART ..............  50
     BY MR. CHINNOCK
13

14   REPORTER CERTIFICATE..............................  69

15

16

17

18

19

20

21

22

23

24

25

|     |                                                                      |
| --- | -------------------------------------------------------------------- |
| 1   | MORNING SESSION, FRIDAY, APRIL 12, 2019                               |
| 2   | (Proceedings commenced at 12:17 p.m.)                                |
| 3   | - - -                                                                |
| 4   | MR. CHINNOCK:  Today is April 12th, 2019.                            |
| 5   | DEPUTY CLERK:  All rise.                                              |
| 6   | THE COURT:  Take a seat.                                             |

We're convened on Case Number 18-cv-2935, *Chinnock versus Navient.*

The case is here today for hearing as to -- and to afford the parties an opportunity to offer evidence as to whether the Court has personal jurisdiction in the case.

Does the plaintiff have any opening statement?

MR. CHINNOCK:  Yes, Your Honor.  Opening statement?

THE COURT:  Yeah.

MR. CHINNOCK:  Okay.  Thank you.

THE COURT:  Why don't you go to the podium and get close to the microphone.

MR. CHINNOCK:  May it please the Court, Your Honor, I'm William Chinnock, counsel for the plaintiff.

This is a case that is part of the national student loan crisis, and the plaintiff is here to offer evidence. She recognizes and honors this Court's authority to seek any evidence that the Court has regarding jurisdiction.

She also recognizes that the U.S. Congress is

```
 1          interested and is reviewing this case, along with similar

 2          cases regarding the student loan findings of 2016.

 3                    THE COURT:  Why don't you give me a summary in

 4          terms of what evidence you think is going to be offered

12:26:24  5 relative to the connections with Ohio for her loan and/or

 6          the transactions that you think support jurisdiction.

 7                    MR. CHINNOCK:  Her testimony will be simply on

 8          the complaint, Your Honor.  It will be very short direct

 9          examination, and then Navient, I understand, will cross her.

12:26:48 10 And then Navient will provide a direct exam on whatever they

11          have, and I will then cross.

12               I think both parties have agreed to have very short

13          testimony here.

14                    THE COURT:  Okay.

12:27:02 15                   MR. CHINNOCK:  But the -- may I continue with

16          my opening statement?

17                    THE COURT:  Yeah.  But it's intended to be a

18          short summary as to what evidence you think is going to be

19          offered.

12:27:14 20                   MR. CHINNOCK:  Well, I've already given that,

21          Your Honor, but I'd like to make the point that the

22          plaintiff, through her counsel, has agreed with two

23          Congressional committees to testify before Congress

24          regarding this case and similar cases because the issue of

12:27:32 25 possible fraud by student loan lenders is at issue.  That's
```

1    the main issue in this case.  And --

2                    THE COURT:  Well, we're not going to deal with

3    that today.

4        I mean, you may have merits evidence on that, and

12:27:49  5    maybe that's a defense or a claim in the case, but today

6    we're trying to decide whether there's enough contact with

7    Ohio to allow jurisdiction.

8                    MR. CHINNOCK:  Yes.  I understand that,

9    Your Honor.

12:28:02  10        What the plaintiff's position is that the -- we

11    believe the Court will find there is no jurisdiction in this

12    case, and, therefore, will not reach -- will not bear the

13    burden of deciding the fraud issue.  Then the state court

14    will have to decide the fraud issue.  That's our position,

12:28:26  15    and that's what we're asking the Court to do.

16                    THE COURT:  Well, if we don't have personal

17    jurisdiction, wouldn't that stop the state from exercising

18    jurisdiction over the same issue?

19                    MR. CHINNOCK:  No, it will not.  The Ohio

12:28:41  20    savings clause permits this case to go forward in the state

21    court.

22                    THE COURT:  Well, it may -- it may allow it to

23    go forward -- go forward, but it would still face the same

24    jurisdiction issue, wouldn't it?

12:28:55  25                    MR. CHINNOCK:  Well, I'm not sure of the

1     entirety of your question.

2          What is your question, Judge.

3               THE COURT:  Well, how would saving statute

4     have any impact?

12:29:04  5               MR. CHINNOCK:  The Ohio savings statute

6     permits the -- the original case to go forward in the state

7     court without being removed back into this Court under

8     Rule 41.

9               THE COURT:  I think you misunderstand

12:29:26 10     my -- what the savings statute does.  But the saving statute

11     is largely a statute of limitations issue, as far as I

12     understand.

13               MR. CHINNOCK:  That's part of it, yes.

14               THE COURT:  It's not a personal jurisdiction

12:29:43 15     controlling authority, right?

16          It deals with the statute of limitations.

17               MR. CHINNOCK:  It does.  But it also

18     authorizes the plaintiff to go into a different court than

19     the federal court and obtain jurisdiction in that court,

12:30:04 20     which is what we did in the Cuyahoga County Common Pleas

21     Court.

22               THE COURT:  Okay.  Do you have any argument or

23     summary as to what evidence you're going to offer?

24               MR. MOORE:  Sure.  Yes.  Thank you,

12:30:15 25     Your Honor.  Branden Moore on behalf of the Navient

1    defendants.

2        I think we've got evidence to suggest -- and it's the

3    same evidence that we submitted to the Court attached to our

4    supplemental briefing, which is the Declaration of

12:30:28  5    Andrew Reinhart -- I've got Andrew here -- and the

6    attachments thereto, which were promissory notes, auto-debit

7    authorization.

8             THE COURT:  So where were the notes actually

9    executed?  Were they executed in Ohio?

12:30:41 10             MR. MOORE:  No, Your Honor.  All the evidence

11   that we have that relates to -- that relates to

12   plaintiff's --

13             THE COURT:  Was the plaintiff living in Ohio?

14             MR. MOORE:  Not to our knowledge, Your Honor.

12:30:53 15   All of the --

16             THE COURT:  At the time the loans were taken

17   out?

18             MR. MOORE:  No, Your Honor.  All of the

19   evidence that we have suggests --

12:30:58 20             THE COURT:  Were the schools Ohio schools?

21             MR. MOORE:  No, Your Honor.

22             THE COURT:  Were any payments made on these

23   loans?

24             MR. MOORE:  Yes, there were.  There were a

12:31:06 25   few --

1          THE COURT:  And where was the --

2          MR. MOORE:  I believe they were made from

3    Seattle, Washington.

4       We have Exhibit B to our affidavit suggests that those

12:31:21  5    were auto-debit authorization forms, and they were signed

6    and banked out of, I believe, Seattle, Washington, but it

7    was not Ohio.

8          THE COURT:  And where were you located?

9          THE WITNESS:  We're incorporated in Delaware

12:31:33  10   and headquartered in Delaware as well, yeah.  We have no

11   places of business in Ohio.

12         THE COURT:  Okay.

13      Why don't you call your first witness.

14         MR. CHINNOCK:  Okay.  I'll call the plaintiff.

12:31:49  15        THE COURT:  If you'll raise your right hand.

16      Do you swear that the testimony you give will be the

17   truth, the whole truth, and nothing but the truth?

18         THE WITNESS:  I do.

19         THE COURT:  If you'll take a seat.

12:32:01  20        THE WITNESS:  Here?

21         THE COURT:  Yes.  Get close to the microphone.

22   State your name and state the spelling of your last name.

23         THE WITNESS:  My name is Julie Anne Chinnock,

24   spelled C-H-I-N-N-O-C-K.

12:32:18  25        THE COURT:  Are those exhibits?

|  |  |
|---|---|
| | 1 |
| | 2 |
| | 3 |
| | 4 |
| 12:32:27 | 5 |

                         MR. CHINNOCK:  One for the Court and one for
her.
                         THE COURT:  We tend to use the electronic so
everybody is watching the same thing.
                         MR. CHINNOCK:  Oh, okay.
                         THE COURT:  But send one to me, and then with
her, use the electronic, the ELMO, if you're going to ask
her questions about it.
                         MR. CHINNOCK:  She's going to be looking at
them?
                         THE COURT:  She can see the same thing on the
ELMO that everybody else sees.
                         MR. CHINNOCK:  Okay.  The exhibit will be
Docket 1-1.
                         THE WITNESS:  You have to have put it over
there on the --
                         THE COURT:  Put it on the ELMO.
                         DEPUTY CLERK:  There's a camera back there.
                         MR. CHINNOCK:  Oh.
                         THE COURT:  Why don't you go help him with the
zoom.
                         Okay.  And if you need to mark something, you
can drag your finger --
                         THE WITNESS:  Okay.  Thank you.
                         THE COURT:  -- and it will . . .

1              Mr. Chinnock, go ahead.

2              DIRECT EXAMINATION OF JULIE ANNE CHINNOCK

3    BY MR. CHINNOCK:

4    Q.    Julie, being placed before you is docket -- or

12:34:06   5    Document Number 1-1.

6              Can you identify that document?

7    A.    Yes.

8    Q.    You can see it?

9    A.    Yes.

12:34:18  10    Q.    What is it?

11    A.    It's a complaint that I filed in the Court of Common

12    Pleas of Cuyahoga County.  I can't see the date, but I do

13    believe it's December 20th, 2018.

14    Q.    Okay.  Is it or is it not the same complaint that you

12:34:34  15    filed in the Common Pleas Court in early 2018?

16    A.    I believe it's virtually the same document.

17    Q.    Okay.  And is there a way you can review the entire

18    document or --

19    A.    You have to turn the page.

12:34:54  20    Q.    I have to turn it here.  Okay.

21              Would you refer to paragraph 6.

22    A.    Okay.

23    Q.    And do you or do you not see any allegation of

24    jurisdiction in Ohio in paragraph 6?

12:35:30  25    A.    No.

J. Chinnock (Direct by W. Chinnock)

12

1   Q.    And would you look at paragraph 7 of the complaint.

2   Let me turn the page so you can see both sides.

3   A.    Okay.

4   Q.    Do you or do not see any allegation of jurisdiction in

5   Ohio in paragraph 7?

6   A.    No, I do not see allegations.

7   Q.    What do you see in paragraph 6 and 7?

8             THE COURT:  Doesn't it largely speak for

9   itself?

10            MR. CHINNOCK:  Pardon me?

11            THE COURT:  Doesn't it speak for itself?

12   Doesn't the document itself say what it says?

13            MR. CHINNOCK:  Sure.  Fine.

14            THE WITNESS:  Can you turn it back to 6.

15            THE COURT:  I mean, the idea is, whatever the

16   document says, it says.

17            THE WITNESS:  Okay.  So there are factual

18   statements about my domicile status and residency status.

19            MR. MOORE:  Your Honor, I'll just object to

20   the fact that, as you mentioned, the document speaks for

21   itself.  We'd be willing to stipulate that the pleading says

22   what it says.  We would obviously dispute the veracity of

23   that pleading, but I don't think there's probably a need for

24   a review of the complaint.

25            THE COURT:  Well, I'm not sure.  Go ahead and

```
           1    ask whatever question, but I think he said he doesn't have

           2    an objection to the document, so . . .

           3    BY MR. CHINNOCK:

           4    Q.    Okay.  Would you look at paragraph 12 and 13 in the

12:37:06   5    Document 1-1.

           6    A.    Can you turn it back one page?

           7    Q.    Page 14?

           8    A.    Or bring it down.  Bring the document down.  Thank

           9    you.

12:37:17  10    Q.    Okay.

          11    A.    Okay.

          12    Q.    12 and 13?

          13    A.    Mm-hmm.

          14    Q.    Do you or do you not see any allegation of

12:37:25  15    jurisdiction in Ohio in paragraph 12 and 13?

          16    A.    No, I don't.  Those are conclusions about

          17    jurisdiction.

          18    Q.    What do you see in 12 and 13?

          19    A.    Conclusions about jurisdiction.

12:37:39  20    Q.    Okay.

          21              MR. CHINNOCK:  I have no further questions.

          22              THE COURT:  Okay.  I'm not sure of the order.

          23         Mr. Rokakis, do you have any questions?

          24              MR. ROKAKIS:  No, Your Honor.  I do not have

12:37:55  25    any questions.
```

1          THE COURT:  Okay.

2          MR. MOORE:  Yes, Your Honor, just a few

3    cross-examination questions.

4              CROSS-EXAMINATION OF JULIE ANNE CHINNOCK

12:38:07  5    BY MR. MOORE:

6    Q.    Good afternoon, Ms. Chinnock.

7    A.    Good afternoon.

8    Q.    Branden Moore on behalf of the Navient defendants.

9          Have you ever lived in Ohio?

12:38:16 10   A.    Yes.

11   Q.    When is the last time that you physically resided in

12   Ohio?

13   A.    Well, I consider Ohio my permanent home.

14   Q.    And how do you consider it your permanent home?

12:38:30 15   A.    Over the last 20 years, I've been in undergraduate

16   school and in graduate school, and so I've only left here to

17   go to school.  And then currently, I'm away from Ohio for

18   employment.

19   Q.    When is the last time that you physically resided in

12:38:50 20   Ohio?

21   A.    I don't understand the question.

22   Q.    I mean, is it safe to say that you -- the last time

23   that you lived in Ohio was prior to undergrad?

24   A.    No.

12:39:04 25   Q.    Okay.  When is the last time that you slept in Ohio

1    besides last night?

2    A.    I'd have to check my calendar, but I come back to Ohio

3    as often as I can.  I slept here many times this year.

4    Q.    Do you still receive mail on a regular basis in Ohio?

12:39:26  5    A.    I do.

6    Q.    When is the last time that you've worked in Ohio?

7    A.    The last time I had a job in Ohio?

8    Q.    Yes.

9    A.    I don't know.  I'd have to check.

12:39:40 10    Q.    Okay.  Would it have been before or after you began

11    undergrad?

12    A.    After.

13    Q.    And what would that job have been?

14    A.    I'd have to check.  I've had many jobs.  Some have

12:39:59 15    been in Ohio; some have been in other places.

16    Q.    For long periods of time or about how long would you

17    say that you've been employed in Ohio at any given point?

18    A.    Sometimes long periods of time.  Yeah, I'd have to

19    check.

12:40:14 20    Q.    Did you ever attend school in Ohio after high school?

21    A.    I did not.

22          MR. MOORE:  Okay.  I have nothing further.

23          THE COURT:  Do you have a current Ohio

24    driver's license?

12:40:27 25          THE WITNESS:  I do not.

1          THE COURT:  Do you have a current driver's

2    license from any state?

3          THE WITNESS:  I have a current driver's

4    license in Washington State.

12:40:35  5          THE COURT:  And when did you get that?

6          THE WITNESS:  I got that, I believe, in August

7    of this year.

8          THE COURT:  Okay.  And did you have a driver's

9    license before August of 2018?

12:40:47 10          THE WITNESS:  I did.

11          THE COURT:  And what state did you have a

12    driver's license in before August of 2018?

13          THE WITNESS:  I had a driver's license in the

14    state of Arizona where I had a job at the time.

12:41:00 15          THE COURT:  Okay.  When did you have an

16    Arizona driver's license?

17          THE WITNESS:  What period of time?

18          THE COURT:  What years or . . .

19          THE WITNESS:  2015.  Let's see.

12:41:12 20    November 2015, I believe.

21          THE COURT:  Through August of '18?

22          THE WITNESS:  Through August of '18.

23          THE COURT:  Okay.  So before Arizona, where

24    did you have a driver's license?

12:41:22 25          THE WITNESS:  I had a driver's license in the

1   state of Oregon.

2              THE COURT:  Okay.  When did you have -- what

3   years did you have an Oregon driver's license?

4              THE WITNESS:  I'd have to check, but I believe

12:41:34  5   it was 2015.

6              THE COURT:  2015?

7              THE WITNESS:  Well, there's some overlap.

8              THE COURT:  Okay.  So that was when the Oregon

9   license finished or started?

12:41:47  10              THE WITNESS:  Both.

11              THE COURT:  Okay.  Before Oregon's 2015

12   driver's license, did you have a driver's license before

13   that?

14              THE WITNESS:  I did.  I had a driver's license

12:41:59  15   in the state of California.

16              THE COURT:  And when did you get that, and

17   when did it end?

18              THE WITNESS:  I'd have to check for sure, but

19   2013 to 2015.

12:42:11  20              THE COURT:  Okay.  Before 2013, did you have a

21   driver's license?

22              THE WITNESS:  I did.

23              THE COURT:  And what state?

24              THE WITNESS:  The state of Oregon.

12:42:23  25              THE COURT:  Okay.  And 2015, when did you get

18

1    the driver's license that ended in 2015 in Oregon?

2                    THE WITNESS:  Or 2013, right?  2013?

3                    THE COURT:  2013.

4                    THE WITNESS:  I'd have to check, but I believe

12:42:54 5    it was 2003.

6                    THE COURT:  So from 2003 to 2013, you had an

7    Oregon driver's license?

8                    THE WITNESS:  I believe.

9                    THE COURT:  Okay.  And are you registered to

12:43:08 10    vote?

11                    THE WITNESS:  I am.

12                    THE COURT:  What state are you registered to

13    vote in?

14                    THE WITNESS:  I'm currently registered to vote

12:43:16 15    in the state of Washington.

16                    THE COURT:  Okay.  And when did you start

17    voting in Washington?

18                    THE WITNESS:  Well, the same time I got my

19    driver's license, I also registered to vote, because when

12:43:28 20    you move to Washington, within 30 days you have to change

21    these things in order to register your vehicle.

22                    THE COURT:  Okay.  Before that, where did you

23    register to vote, before Washington?

24            Were you registered in any other states before

12:43:45 25    Washington?

1          THE WITNESS:  I've been registered to vote in

2    all the states I mentioned previously.  When I registered my

3    vehicle, I registered to vote.

4          THE COURT:  Okay.  So did you register to vote

12:44:01  5    in similar time periods for each of the states you mentioned

6    before?

7          THE WITNESS:  Most likely.

8          THE COURT:  What college did you attend?

9          THE WITNESS:  I've attended eight or nine

12:44:16  10   colleges.

11         THE COURT:  Okay.  What colleges did you

12   attend?

13         THE WITNESS:  I attended Loyola University of

14   Chicago, San Francisco State University, San Mateo College,

12:44:35  15   several other colleges in San Francisco.

16      Bastyr University in Seattle, Portland State

17   University, Linfield College in Portland, and University of

18   Southern California Medical School.

19         THE COURT:  Okay.  Did you get degrees from

12:45:00  20   any of those?

21         THE WITNESS:  I got degrees from Loyola

22   University of Chicago, Linfield College, Portland State

23   University, University of Southern California.

24         THE COURT:  Okay.  And was your terminal

12:45:13  25   degree an MD degree?

1                    THE WITNESS:  It was not.

2                    THE COURT:  Okay.  What was the terminal

3       degree?

4                    THE WITNESS:  A master's in nurse anesthesia.

12:45:23 5            THE COURT:  Okay.  And was that from Southern

6       California?

7                    THE WITNESS:  It was.

8                    THE COURT:  Okay.  Did you attend any -- and

9       did you get loans for some of those?

12:45:33 10           THE WITNESS:  I believe I received loans for

11      all of those.

12                   THE COURT:  Okay.  Did you get loans for any

13      Ohio universities?

14                   THE WITNESS:  I never attended university in

12:45:42 15      Ohio.

16                   THE COURT:  Okay.

17                   THE WITNESS:  So, no.

18                   THE COURT:  When you were making payments on

19      the educational loans, how did you make payments?

12:45:59 20           THE WITNESS:  The initial payments that I made

21      were auto-debit payments from my bank account.

22                   THE COURT:  Did you have bank accounts at the

23      locations where you were living?

24                   THE WITNESS:  Yes.

12:46:13 25           THE COURT:  What banks did you bank with?

1              THE WITNESS:  Primarily Wells Fargo.

2              THE COURT:  And did you authorize auto debits

3       from the Wells Fargo Bank where you were living?

4              THE WITNESS:  I did.  And then I made a lump

12:46:26  5    sum payment of about -- I'd have to check, I think $130,000

6       last year.  Instead of through auto debit, it was through a

7       bank transfer.

8              THE COURT:  Okay.  And which bank was that

9       from?

12:46:47 10            THE WITNESS:  I'd have to check, but I believe

11      it was Wells Fargo.

12             THE COURT:  And where were you living when you

13      made that payment?

14             THE WITNESS:  I was living in Phoenix,

12:46:57 15    Arizona.

16             THE COURT:  Okay.  Did you make any of them

17      while you were residing in Ohio, any of these payments?

18             THE WITNESS:  I may have made some payments

19      while I was residing in Ohio.  I can't recall, but most of

12:47:20 20    them were auto-debit payments.

21             THE COURT:  From California banks?

22             THE WITNESS:  No.  The bank is located in

23      Portland, Oregon.

24             THE COURT:  Okay.  Okay.

12:47:35 25        Do you have any follow-up questions?

1                    MR. CHINNOCK:  Yes, Your Honor.

2               REDIRECT EXAMINATION OF JULIE ANNE CHINNOCK

3     BY MR. CHINNOCK:

4     Q.    Julie, you've mentioned a number of years in which you

12:47:48  5     have acquired driver's licenses and voting rights in these

6     various states and not in Ohio.

7               Can you tell us why you did acquire those?

8               And did you retain your Ohio privileges at the same

9     time or not?

12:48:07 10    A.    My Ohio privileges for -- would you clarify that?

11    Q.    For voting and for driving.

12                    THE COURT:  Were you registered to vote in

13    Ohio?

14                    THE WITNESS:  I have been registered to vote

12:48:20 15    in Ohio.  I am not registered currently to vote in Ohio.

16                    THE COURT:  When did you last vote in Ohio?

17                    THE WITNESS:  I'd have to check.

18                    THE COURT:  Estimate.

19                    THE WITNESS:  I've moved so many times and

12:48:30 20    reregistered to vote and reregistered for driver's licenses,

21    I really don't know.

22                    THE COURT:  What was the last Ohio election

23    you remember voting in?

24                    THE WITNESS:  I don't recall where I was when

12:48:49 25    I voted in Ohio.  I mean, I often voted absentee for many of

1    those places, too.

2                    THE COURT:  So who was the last Ohio senator

3    you recall voting for?

4                    THE WITNESS:  Yeah.  I don't recall.  I don't

12:49:07  5    recall.

6    BY MR. CHINNOCK:

7    Q.    Julie, why did you register to vote and register for

8    driving privileges in these states that you --

9                    THE COURT:  Maybe we should clear something

12:49:19  10    up.  The national media or the U.S. Attorney's Office may be

11    in.

12        Did you ever vote in these other states and vote in

13    Ohio in the same year?

14                    THE WITNESS:  I did not.

12:49:35  15    BY MR. CHINNOCK:

16    Q.    I don't mean to imply you voted in two different

17    states at the same time.

18        My question is, why did you register to vote in these

19    states and why did you acquire licenses --

12:49:52  20    A.    It's my understanding --

21                    (Reporter clarification.)

22                    THE WITNESS:  Oh, sure.  No problem.

23        It's my understanding that for most of these states,

24    or all of them, within 30 days of moving to the state, you

12:49:59  25    have to change your driver's license and -- in order to

1    register a vehicle.

2         Some of the states also require that you are

3    registered to vote in that state in order to do so.

4         So I've, at the same time, did all of those things.

12:50:16  5              MR. CHINNOCK:  Okay.  Thank you.

6              THE COURT:  Have you actually voted in any of

7    these states?

8              THE WITNESS:  I have.

9              THE COURT:  Okay.

12:50:23 10        Do you have any follow-up?

11        How about you, Mr. Rokakis?

12              MR. ROKAKIS:  I have some follow-up,

13    Your Honor.

14              THE COURT:  Okay.

12:50:35 15              MR. ROKAKIS:  Your Honor, this is slightly

16    outside the scope of the direct.  I don't know if the Court

17    will allow it, but I want to ask the witness about her tax

18    returns.

19              CROSS-EXAMINATION OF JULIE ANNE CHINNOCK

12:50:44 20    BY MR. ROKAKIS:

21    Q.    Ms. Chinnock, I assume you file annual tax returns, do

22    you not?

23    A.    I do.

24    Q.    Okay.  When is the last time you recall filing a

12:50:54 25    federal income tax return which listed your Fairview Park

1       address as your residence?

2       A.      Can you repeat the question?

3       Q.      Have you ever filed a federal income tax return which

4       showed your Fairview Park address as your residence?

12:51:09 5      A.      I have.

6       Q.      And do you recall when that was?

7       A.      I do not.  I'd have to check.

8       Q.      Was it more than five years ago?

9       A.      I don't know.

12:51:22 10     Q.      Was it more than ten years ago, do you know?

11      A.      I don't want to give you the wrong answer.  I'd have

12      to check.

13      Q.      Okay.  You stated you still receive mail in Fairview

14      Park; is that correct?

12:51:33 15     A.      I do.

16      Q.      Okay.  Who resides at that address?

17      A.      My mother, and I do when I'm here.

18      Q.      And what type of mail do you receive there?  Is it

19      junk mail?  Is it mail of importance?

12:51:46 20             What kind of mail?

21      A.      It's a variety of mail.  Some of it is junk mail, some

22      of it's financial statements, some of it's personal.  It's a

23      variety.  It's the same kind of mail I get other places.

24             It's listed as my permanent address, so I get a fair

12:52:05 25     amount of mail there.

1    Q.    Okay.  It's listed -- the Fairview Park address is

2    listed as your permanent address with what entity or with

3    who?

4    A.    I can't say offhand, but in a lot of applications, you

12:52:22  5    have to fill out your temporary address and your permanent

6    address.  Student loans, school applications.  I would

7    say -- the ones more recently are school applications, and

8    that's one place where it's listed as my permanent address.

9              MR. ROKAKIS:  Okay.  I have no further

12:52:43  10    questions.

11              THE COURT:  I have kind of a question.

12         Did you file your 2018 tax returns yet?

13              THE WITNESS:  I have not.

14              THE COURT:  Have you filed -- you filed the

12:52:56  15    2017 tax returns, right?

16              THE WITNESS:  I did.

17              THE COURT:  And did you pay Ohio state taxes

18    in 2017?

19              THE WITNESS:  I did not.

12:53:06  20              THE COURT:  Did you pay Ohio state taxes in

21    2016?

22              THE WITNESS:  I did not.

23              THE COURT:  How about 2015?

24              THE WITNESS:  I did not.  I was not employed

12:53:16  25    in Ohio during those periods of time.

```
          1              THE COURT:  Well, if your residence was in
          2   Ohio, though.
          3         Did you pay the 2015 Ohio state taxes?
          4              THE WITNESS:  I did not.
12:53:25  5              THE COURT:  How about 2014?
          6              THE WITNESS:  I don't know.
          7              THE COURT:  How about 2013?  Did you pay Ohio
          8   state taxes?
          9              THE WITNESS:  I don't know.  I'd have to
12:53:36 10   check.
         11              THE COURT:  Did you pay Fairview Park state or
         12   city taxes -- or Fairview Park city taxes in '17 or '16 or
         13   '15 or '14?
         14              THE WITNESS:  I don't believe so, but I'd have
12:53:51 15   to check.
         16              THE COURT:  Do you pay any other state taxes
         17   apart from Oregon?
         18              THE WITNESS:  I don't pay Oregon state taxes.
         19   I live in Seattle, Washington.
12:54:05 20              THE COURT:  I'm sorry.
         21              THE WITNESS:  So Washington State doesn't have
         22   a state tax.  But last year, I was able to gain employment
         23   in Arizona, and I paid both Oregon and Arizona taxes that
         24   year.
12:54:19 25              THE COURT:  Okay.  Anybody have any follow-up
```

1        questions on any of that?

2              Okay.  Do you have any other witnesses?

3              Thanks, ma'am.

4                    THE WITNESS:  Sure.

12:54:30  5                    MR. CHINNOCK:  No, Your Honor.

6                    THE COURT:  And do you move the admission

7        of --

8                    MR. CHINNOCK:  Yes.

9                    THE COURT:  -- what would be, I guess,

12:54:38 10        Plaintiff's Exhibit 1?

11                    MR. CHINNOCK:  Document 1-1 in the record.

12                    THE COURT:  Okay.  We'll refer to that as

13        Plaintiff's Exhibit 1.

14                    MR. CHINNOCK:  Okay.

12:54:46 15                    THE COURT:  Okay.  And with that, do you rest

16        your argument?

17            Do you rest?

18                    MR. CHINNOCK:  Yes.

19                    THE COURT:  Okay.  Would you call your first

12:54:56 20        witness?

21            Thanks, ma'am.  You can step down.

22                    THE WITNESS:  Okay.

23                    MR. MOORE:  Yes, Your Honor, Navient

24        defendants call Andrew Reinhart.

12:55:07 25                    THE COURT:  And if you'll raise your right

Reinhart (Direct by Moore)

29

1    hand.

2        Do you swear that the testimony you give will be the

3    truth, the whole truth, and nothing but the truth.

4            THE WITNESS:  I do.

12:55:15  5            THE COURT:  Please take a seat.

6        Tell us your name and the spelling of your last name.

7            THE WITNESS:  My name is Andrew Reinhart.  My

8    last name is spelled R-E-I-N-H-A-R-T.

9            DIRECT EXAMINATION OF ANDREW REINHART

12:55:31  10   BY MR. MOORE:

11   Q.   Good afternoon, Mr. Reinhart.

12        Can you tell us where you're currently employed?

13   A.   I'm currently employed for Navient Solutions, LLC.

14   Q.   And is Navient Solutions, LLC, one of the defendants

12:55:55  15   in this action?

16   A.   Yes.

17   Q.   Are you familiar with each of the defendant -- Navient

18   defendant entities in this case?

19   A.   Somewhat familiar, yes.

12:56:05  20   Q.   Okay.  Can you explain what Navient Solutions, LLC, in

21   particular does?

22   A.   Navient Solutions, LLC -- or we say "NSL" for short.

23   We're tasked with providing -- sorry.

24        We are a servicer for Federal Family Education Loan

12:56:26  25   Program loans, as well as direct loans.  We also have a

1    portfolio of private student loans that we service.

2        Those responsibilities include fielding phone calls

3    for customer service, for general questions, as well as

4    processing payments; processing paperwork for different

12:56:47  5    repayment options, deferment, forbearance.

6        That's the general gist of it, yes.

7    Q.    And where is your office at Navient Solutions, LLC?

8    A.    I am employed in Wilkes-Barre, Pennsylvania.

9    Q.    Is that Navient Solutions, LLC's headquarters?

12:57:04 10    A.    It is not, no.

11    Q.    Where is their headquarters?

12    A.    The headquarters building is located in Delaware.

13    Q.    And does Navient Solutions, LLC, have any offices

14    outside of Delaware and Wilkes-Barre, PA?

12:57:21 15    A.    We have several, yes.

16    Q.    Do they have any offices in Ohio?

17    A.    We do not.

18    Q.    And so there's also a defendant in this case that's

19    Navient Corporation.

12:57:31 20        What is the relationship between Navient Corporation

21    and Navient Solutions, LLC?

22    A.    NSL is a subsidiary of Navient Corp.

23    Q.    Do you know where Navient Corporation is incorporated?

24    A.    Delaware.

12:57:43 25    Q.    Okay.  Do you know where they're headquartered?

Reinhart (Direct by Moore)

31

|  |  |
|---|---|
| 1 | A.    Delaware. |
| 2 | Q.    Do you know if they have any places of business |
| 3 | located in Ohio? |
| 4 | A.    They do not. |
| 12:57:54 5 | Q.    And how about the third and final Navient entity |
| 6 | that's been named in this case, Navient Student Loans Trust? |
| 7 | Are you familiar with that entity? |
| 8 | A.    Somewhat, yes. |
| 9 | Q.    What is the relationship with the trust, we'll call |
| 12:58:11 10 | it, and the other two Navient defendant entities? |
| 11 | Do you know? |
| 12 | A.    So the -- just generally speaking, high level, most of |
| 13 | the commercial Federal Family Education Loan Program loans |
| 14 | are owned by trusts.  We service those loans on behalf of |
| 12:58:30 15 | the trust. |
| 16 | Q.    Does that trust have a headquarters? |
| 17 | Does it have a physical office location? |
| 18 | A.    I'm unsure.  I don't believe so, though. |
| 19 | Q.    Okay.  Do you know if they have any offices located in |
| 12:58:42 20 | Ohio? |
| 21 | A.    I know they don't have any offices in Ohio. |
| 22 | Q.    Okay.  And you said that you worked for Navient |
| 23 | Solutions, LLC, right? |
| 24 | A.    That's correct. |
| 12:58:51 25 | Q.    And what is your role at Navient Solutions? |

Reinhart (Direct by Moore)

32

1      What is your title?

2   A.    I am a senior account analyst.

3   Q.    As a senior account analyst, what sorts of duties do

4   you have?

12:59:01 5   A.    Currently, I'm tasked with reviewing escalated

6   complaints, both consumer and legal.  I gather documents and

7   analyze accounts and provide that analysis to either

8   in-house counsel or respond directly to consumers.

9         A lot of times we will gather up the documents for

12:59:23 10  production basically, and we provide those to in-house

11  counsel.

12  Q.    And so in that role, then, it's -- are you familiar

13  with the business records of Navient generally?

14  A.    Yes.

12:59:38 15  Q.    With respect to plaintiff in particular, have you had

16  an opportunity to review, in the scope of your employment as

17  an analyst, the business records that relate to plaintiff's

18  student loans?

19  A.    I have.

12:59:55 20  Q.    And is Navient required to maintain any records that

21  contain plaintiff's home address?

22  A.    Yes, we are.

23  Q.    Are they required to maintain any records that would

24  include plaintiff's work address?

13:00:17 25  A.    Yes.

```
 1   Q.    Do they maintain any records that would include
 2   plaintiff's banking information?
 3   A.    If they applied for auto debit, yes.
 4   Q.    Okay.  Based on your review of plaintiff's records
 5   that are in Navient's possession, is there any suggestion
 6   that from the time that plaintiff entered college, applied
 7   for student loans, until the present --
 8              MR. CHINNOCK:  Object, Your Honor, as to any
 9   suggestion.
10              THE COURT:  I think it's leading.  So I'll
11   sustain the objection.
12   BY MR. MOORE:
13   Q.    I'll say it this way:  Do the records -- where -- I'll
14   say this:
15        In your review of the records, what have you found to
16   be plaintiff's place of -- place of residence from the time
17   that she applied for student loans with Navient until the
18   present?
19   A.    All of the addresses on file were not Ohio addresses.
20   There have been several in Washington State, Los Angeles,
21   California, as well as Arizona, and I believe there was an
22   Oregon address in there, too.
23   Q.    And how about her places of employment?
24        Anything that -- what did you see in that regard?
25   A.    The places of employment that we had on file, again,
```

Reinhart (Direct by Moore)

34

|   |   |
|---|---|
| 1 | none of them were Ohio.  I believe there was employment in |
| 2 | Arizona, as well as Los Angeles, California. |
| 3 | Q.    And did you -- you had mentioned that there might be |
| 4 | banking information if she had ever applied for auto debit. |
| 13:02:10  5 | Did plaintiff ever apply for auto debit from what you |
| 6 | can tell based on your review of the records? |
| 7 | A.    Yes, she did apply for auto debit. |
| 8 | Q.    And do you recall where the bank was located where |
| 9 | that auto debit was registered from? |
| 13:02:22  10 | A.    I don't recall offhand, but I know it wasn't Ohio.  I |
| 11 | believe it was either -- I believe there was two of them |
| 12 | actually.  One was in Portland, Oregon, and the other one |
| 13 | was in Arizona, if I recall correctly. |
| 14 | Q.    So is there any evidence that you've seen that there |
| 13:02:47  15 | were any loans solicited from the state of Ohio when it |
| 16 | comes to the plaintiff? |
| 17 | MR. CHINNOCK:  Object to asking for a |
| 18 | conclusion. |
| 19 | THE COURT:  Where do you come up with |
| 13:02:59  20 | questions like this? |
| 21 | MR. MOORE:  I'm sorry? |
| 22 | THE COURT:  You're asking him to summarize the |
| 23 | records.  If you have the records or you have exhibits that |
| 24 | show where she said she was living, you ought to offer it. |
| 13:03:13  25 | But you shouldn't call a witness just to say, are some |

        1    exhibits that aren't here, what do they show.

        2              MR. MOORE:  I've got them, Your Honor.  I just

        3    wanted to sort of give a brief -- we'll move on to that.

        4              THE COURT:  Okay.  Why don't you get to the

13:03:29 5    exhibits then.

        6              MR. MOORE:  Sure.  Thank you.

        7    BY MR. MOORE:

        8    Q.    Mr. Reinhart, I'm going to show you what's been marked

        9    as Exhibit A, and it is Exhibit A to the declaration of

13:03:43 10   yours that we submitted to the Court that's been docketed as

        11   25-1.

        12            Do you --

        13              THE COURT:  Is that a business record kept in

        14   the normal course of business by somebody who has

13:03:54 15   responsibility for keeping those records and accurately

        16   reporting?

        17              THE WITNESS:  It is.

        18   BY MR. MOORE:

        19   Q.    Do you recognize this document?

13:04:04 20   A.    Can you make it a little smaller or zoom out a little

        21   bit just so I can see the whole document.

        22   Q.    I think we are zoomed out as far as it can go.

        23   A.    That's fine.

        24            This is an application and promissory note.

13:04:20 25   Specifically, it's the promissory note for Ms. Chinnock.

1    Q.    And what address do you see on there?

2    A.    It's listed as Seattle, Washington, 98109.

3                   THE COURT:  And what was the date of that?

4    That was '04?

13:04:36  5                   THE WITNESS:  Yes.

6                   MR. MOORE:  I'm going to move this up a little

7    bit, Your Honor, so that we can see the date.

8                   THE WITNESS:  The bottom right.  It was

9    signed on --

13:04:45 10                   THE COURT:  So it was signed in 2003?

11                   THE WITNESS:  Yes, Your Honor.

12   BY MR. MOORE:

13   Q.    And is this the plaintiff's name?

14         Is it your understanding that this is the plaintiff

13:04:57 15   that sits here today that she submitted this document?

16   A.    Yes.

17   Q.    I'll flip to -- can you describe what this record is?

18   A.    Again, this is an application and promissory note.

19   Specifically, this is a promissory note for a Smart Option

13:05:21 20   Student Loan, which is a consolidation loan.

21   Q.    And is this something that the plaintiff submitted to

22   Navient?

23   A.    It is.

24   Q.    And where does it show her address?

13:05:31 25   A.    Top right, right underneath her name.  The city is

1    listed as Portland, Oregon.  97217 I think that is.

2    Q.   And does this show anywhere -- anywhere where the

3    school is located on this form?

4    A.   So I just want to back up really quick.  I'm sorry.

13:06:04   5    Could you go back up to the top.

6    Q.   Sure.

7    A.   I just wanted to clarify.  This is a Smart Option

8    Student Loan.  It's actually not a consolidation loan.  It's

9    an application for a private loan, it looks like, actually.

13:06:20   10   Q.   Okay.  Thank you.

11   A.   I just wanted to clarify that.

12        But you can go ahead.

13   Q.   We'll move forward then.

14             THE COURT:  And what was the year of that

13:06:40   15   loan?

16             THE WITNESS:  Can you page back?

17        The application was signed 5 -- or I'm sorry.  Maybe

18   it looks like an 8 or a 5.  I can't tell.  But it was in

19   2009.

13:06:58   20             THE COURT:  So August 10th, 2009?

21             THE WITNESS:  Yes.

22   BY MR. MOORE:

23   Q.   I'll zoom in a little bit.  Just so you can . . .

24             THE COURT:  Mr. Rokakis, that's a famous day

13:07:08   25   of the year.  August 10th.

Reinhart (Direct by Moore)

38

```
          1              MR. ROKAKIS:  That's famous, Your Honor?

          2              THE COURT:  Oh, I thought it was August 10th

          3    right here.

          4    BY MR. MOORE:

13:07:18  5    Q.    There it is.  Yeah, that's . . .

          6              THE COURT:  That's Rocky Colavito's birthday.

          7              MR. ROKAKIS:  Okay.  You had me at a loss,

          8    Your Honor.  I'll make a note of that.

          9    BY MR. MOORE:

13:07:38 10    Q.    Let's jump to the next form.

         11          Do you recognize this form?

         12    A.    I do.  It's a --

         13    Q.    And what is this form?

         14    A.    It is an application and promissory note for direct

13:07:51 15    loans, which are federal student loans from the Department

         16    of Education.

         17    Q.    And based on your records, your review of this record,

         18    was this submitted by the plaintiff in this case?

         19    A.    Yes, it was.

13:08:06 20    Q.    And does this record show the plaintiff's driver's

         21    license, state issuance number?  Or the state of issuance of

         22    the defendant -- or plaintiff's driver license.

         23              THE COURT:  I think he's referring to this.

         24    (Indicating.)

13:08:40 25              THE WITNESS:  Yes, it does.
```

Reinhart (Direct by Moore)

39

BY MR. MOORE:

Q.    And what state does the plaintiff show that she has a
driver's license?

A.    In Oregon.

13:08:47  Q.    And does it also show the plaintiff's address?

A.    It does.

Q.    And where does the plaintiff list as her address?

A.    In Portland, Oregon, 97217.

Q.    Does it show the school that plaintiff is attending as
13:09:01  applied to these loans?

A.    It does.

Q.    And where is that school located?

A.    Linfield College, and it's located in McMinnville,
Oregon.

13:09:14  Q.    Thank you.

And what was the -- what is the date of this document?

A.    It was signed April 2009.

Q.    Thank you.

And do you recognize this record?

13:09:37  A.    Yes, I do.

Q.    Is this a -- and what is it?

A.    This is an application and master promissory note for
direct loans.

Q.    And was this submitted by the plaintiff in this case?

13:09:52  A.    Yes, it was.

```
          1    Q.    Does this document also show the state in which

          2    plaintiff had a driver's license at the time she submitted

          3    this application?

          4    A.    Yes, it does.

13:10:03  5    Q.    And what state is that?

          6    A.    In Oregon.

          7    Q.    And does it also show plaintiff's address at the time

          8    she submitted this record?

          9    A.    Yes.

13:10:13 10    Q.    And where -- what state does it show the plaintiff is

         11    residing in?

         12    A.    Portland, Oregon.

         13    Q.    And what is the date of this -- that this record was

         14    submitted?

13:10:25 15    A.    July 17th, 2013.

         16    Q.    Okay.  I'm going to show you now what's marked as

         17    Exhibit B, Defendants' Exhibit B.  This was submitted to the

         18    Court attached to Mr. Reinhart's declaration as Exhibit B to

         19    Docket Number 25-1.

13:11:09 20          Mr. Reinhart, do you recognize this document?

         21    A.    Yes.  This is a Navient business record.  It's an

         22    application for automatic debit.

         23    Q.    And was this submitted by the plaintiff in this case?

         24    A.    Yes, it was.

13:11:22 25    Q.    And does it list plaintiff's address at the time that
```

1    she submitted this form?

2    A.    Yes, it does.

3    Q.    And where does it show that plaintiff was residing at

4    the time?

13:11:33  5    A.    Portland, Oregon.

6    Q.    And what is the date that this form was submitted?

7    A.    February 18th, 2011.

8    Q.    And does this form also include the bank in which

9    defendant's [sic] auto debits would have been withdrawn

13:12:07  10   from?

11   A.    Yes.

12   Q.    And where does it show that that bank was located?

13   A.    Los Angeles, California.

14   Q.    Would there have been any other records, aside from

13:12:35  15   what you've seen, related to promissory notes that Navient

16   would have had that would have corresponded to other loans

17   that plaintiff had with Navient, other than what we've seen

18   here today?

19   A.    I'm not -- I'm not sure what you mean.

13:12:54  20   Q.    Did we see -- did you have an opportunity to look at

21   every promissory note that Navient has on file with respect

22   to the plaintiff?

23   A.    Yes, I did.

24   Q.    And was this the -- is this the entirety of the

13:13:08  25   authorization -- the debit authorization forms that Navient

Reinhart (Direct by Moore)

42

```
            1    has on file with regard to the plaintiff?

            2    A.    Yes.

            3    Q.    Thank you.

            4          Next I'm going to show you what's been marked as

13:13:18    5    Defendants' Exhibit C.  This was submitted as Exhibit C to

            6    your declaration, which is at -- was docketed at 25-1.

            7          Do you recognize this document?

            8    A.    Yes.

            9    Q.    Can you explain what it is?

13:13:42   10    A.    This is an inquiry that was received at Navient that

           11    was sent by Ms. Chinnock.

           12    Q.    And what do you see at the top?

           13    A.    It's -- it looks like her letterhead which lists her

           14    address in Scottsdale, Arizona.

13:14:03   15    Q.    Is there any other correspondence that Navient has on

           16    file from the plaintiff?

           17    A.    Just general correspondence, I don't believe so.

           18    Q.    And when is this correspondence dated?

           19    A.    Can you move it up a little bit?

13:14:20   20    Q.    Sure.

           21    A.    Sorry.  Go back down.  Sorry.  Upper right-hand

           22    corner.  It's August 3rd, 2017.

           23    Q.    Thank you.

           24          Finally, I'm going to show you what has been marked as

13:14:40   25    Defendant's Exhibit D.
```

Reinhart (Direct by Moore)                    43

```
         1          This was also included as Exhibit D to your -- the

         2     declaration that you submitted which has been docketed at

         3     25-1.

         4          Do you recognize this document?

13:14:56 5     A.   Can you move it down a bit?

         6     Q.   Sure.  Sorry about that.

         7     A.   This is part of Navient's business records.  This is

         8     an application submitted by the plaintiff for income-based

         9     repayment.

13:15:10 10    Q.   And was this particular form submitted by the

         11    plaintiff in this case?

         12    A.   Yes, it was.

         13    Q.   Does it list plaintiff's address?

         14    A.   It does.

13:15:22 15    Q.   And where does it show the plaintiff was residing at

         16    the time that she submitted this form?

         17    A.   Portland, Oregon.

         18    Q.   And when -- when does it show that the plaintiff

         19    submitted this form?

13:15:34 20    A.   January 15th, 2011.

         21    Q.   Does this form require that the plaintiff certify the

         22    veracity of the information therein?

         23    A.   Yes.  So down -- it's a little hard to read.  But

         24    under Section 5, second bullet point.

13:15:58 25         Generally, in Section 5, she would have to certify
```

1    that all the information on the form is accurate.

2    Q.    Thank you.

3          And do you recognize this document?

4    A.    Yes.  This is an addendum to the income-driven or

13:16:19  5    income-based repayment plan.  This is the alternative

6    documentation of income.

7    Q.    And when would this have been submitted?

8    A.    It would have been submitted alongside of the

9    application that we just looked at.

13:16:34 10    Q.    Does this also show her address?

11    A.    It does.

12    Q.    And where does it show that plaintiff was living at

13    the time that she submitted this document?

14    A.    Portland, Oregon.

13:17:05 15    Q.    Do you recognize this document?

16    A.    Yes.

17    Q.    And what is it?

18    A.    This is a copy of plaintiff's 1040 from their tax

19    return that was submitted with the income-based repayment

13:17:17 20    application.

21    Q.    And does this show her address?

22    A.    It does.

23    Q.    And where does it show that she was residing at the

24    time that she submitted this to Navient?

13:17:29 25    A.    Portland, Oregon.

```
 1    Q.    Does Navient have any other income-based repayment
 2    plan requests on file for the plaintiff, to your knowledge?
 3    A.    Yes.  There was a few in that packet that you went by.
 4    Q.    Let me look then.
13:18:03  5    A.    The first application was submitted, it looks like,
 6    manually.  Whereas, the second ones were submitted through
 7    the Department of Education's website.
 8    Q.    Oh, I see.
 9    A.    The ones with the blue ink.  Page through.  Right on
13:18:27 10    the right-hand side.
11    Q.    Okay.  So what did you say this was?
12    A.    So this is -- sorry.  Excuse me.  -- an application
13    for income-driven repayment.  This is just in electronic
14    form.  It's submitted through the Department of Education's
13:18:48 15    website.
16    Q.    Does it show when this would have been submitted?
17    A.    Yes.  It was created 9-22-2015.
18    Q.    And does it show where the plaintiff was residing at
19    the time that she submitted this --
13:19:08 20    A.    It does.
21    Q.    -- form?
22          And where was that?
23    A.    Los Angeles, California.
24    Q.    Is this a new form or just a continuation of the
13:19:27 25    previous one?
```

Reinhart (Direct by Moore)

46

```
              1    A.     So this is another application.  So borrowers have to

              2    recertify yearly or anytime their income changes.  So this

              3    is something we would receive on a yearly basis.

              4    Q.     I see.

13:19:39      5           Does it show when this document was created?

              6    A.     Yes.  June 28th, 2016.

              7    Q.     And this was submitted -- does it show who submitted

              8    this document?

              9    A.     Yes.  The plaintiff, Ms. Chinnock.

13:19:51     10    Q.     And does it show where she was residing at the time

             11    that she submitted this document?

             12    A.     It does.

             13    Q.     And where was that?

             14    A.     Portland, Oregon.

13:20:00     15    Q.     Thank you.

             16           How about this record?

             17    A.     Again, it's just an annual recertification for the

             18    income-driven repayment plan.

             19    Q.     And who would have submitted this?

13:20:18     20    A.     The plaintiff.

             21    Q.     And when would she have submitted it?

             22    A.     It was submitted August 30th, 2017.

             23    Q.     And we can tell that right underneath the "Created"

             24    tab there?

13:20:28     25    A.     That's correct.
```

Reinhart (Direct by Moore)
47

```
     1    Q.    Does it show where the plaintiff was residing at the
     2    time that she submitted this form?
     3    A.    It does.
     4    Q.    And where was she residing?
13:20:38  5    A.    Scottsdale, Arizona.
     6    Q.    Thank you.
     7          And how about this form?
     8    A.    This is an income-driven repayment plan request.
     9    Q.    And does it show who submitted it?
13:21:04 10    A.    It does.
     11   Q.    And who was that?
     12   A.    The plaintiff.
     13   Q.    Does it show where she was living at the time that she
     14   submitted it?
13:21:11 15    A.    It does.
     16   Q.    And where was that?
     17   A.    Seattle, Washington.
     18   Q.    Do you recognize this document?
     19   A.    I do.
13:21:36 20    Q.    And what is it?
     21   A.    It's correspondence that we received from the
     22   plaintiff.
     23   Q.    And --
     24   A.    This was --
13:21:49 25    Q.    -- why would this correspondence have been received by
```

1    Navient?

2    A.    This was received in conjunction with an application,

3    most likely for income-based repayment, or it could be for

4    some type of deferment.

13:22:04  5    Q.    And what would the purpose of the correspondence be?

6    A.    It appears that it's just validating her employment

7    status.

8    Q.    And does it show where she was employed at the time?

9    A.    It does.

13:22:17 10    Q.    Where was -- where does the record show that she was

11    employed?

12    A.    CRH Anesthesia.

13    Q.    And does it show when that employment relationship

14    would have commenced?

13:22:33 15    A.    Yes.  June 11th, 2018.

16    Q.    And do you recognize that document?

17    A.    Yes.

18    Q.    And what is it?

19    A.    This is a copy of the plaintiff's pay stub.

13:22:57 20    Q.    Why would this have been submitted to Navient?

21    A.    This was submitted in conjunction with the

22    income-driven repayment plans --

23    Q.    Okay.

24    A.    -- to verify her income.

13:23:06 25    Q.    And where does it show that the plaintiff was employed

1    at the time?

2    A.    The same place, CHR.

3    Q.    Is there an address listed for that entity?

4    A.    Yes.  It's a little blurry, but I believe it's

13:23:21  5    Bellevue, Washington.

6    Q.    And does it show when this pay period covered?

7    A.    Yes.  The check stub for the period was -- it either

8    looks like a 3 or a 9.  I'm not sure.  But it was 2018.

9    Q.    Thank you.

13:23:43 10              MR. MOORE:  Your Honor, I would move for the

11    admission of Exhibits A through D for the defendant.

12              THE COURT:  Is there any objection?

13              MR. CHINNOCK:  Yes, there is.

14              THE COURT:  I'll overrule the objection.  I'll

13:23:55 15    receive the exhibits.

16              MR. MOORE:  Thank you, Your Honor.

17    BY MR. MOORE:

18    Q.    Mr. Reinhart, we touched on this briefly at the

19    beginning of your testimony.  We'll circle back to it.

13:24:03 20         Based on the records that you've reviewed today, are

21    these all of the records that Navient has on file for the

22    plaintiff?

23    A.    We have other records pertaining to servicing history,

24    things like that.  Payment history.

13:24:22 25    Q.    Are there any other records that would have shown her

1    address that we didn't review today?

2    A.    No.

3    Q.    Based on the records that you've reviewed today, is

4    there any -- does it show that plaintiff ever resided in

13:24:40  5    Ohio?

6    A.    It does not.

7              MR. MOORE:  Thank you.  I have nothing

8    further.

9              THE COURT:  Cross-examination?

13:24:47 10        Do you have any?

11             MR. ROKAKIS:  No questions, Your Honor.

12             THE COURT:  Okay.

13             CROSS-EXAMINATION OF ANDREW REINHART

14   BY MR. CHINNOCK:

13:24:59 15   Q.    How many loans does Navient Trust -- not Navient --

16   including all three of those entities, but Navient Trust is

17   the entity that claims the plaintiff owes loans to them,

18   right?

19   A.    I'm sorry.  I don't understand your question.  It was

13:25:19 20   kind of two questions merged.

21   Q.    Okay.  Well, there's three entities that have been

22   referred to as Navient defendants; one is the LLC, one is

23   the corporation, and one is the Navient Trust, right?

24   A.    Correct.

13:25:38 25   Q.    And the Navient Trust is the entity that claims

1    they -- the trust is owned -- owed these loans from the

2    plaintiff, right?

3    A.    Yes.

4    Q.    Now, how many loans does Navient Trust claim the

13:25:53 5    plaintiff owes to it?

6    A.    Could you be more specific?

7          You mean specifically for your client or in general?

8    Q.    No.  How many loans does Navient Trust claim the

9    plaintiff owes to it?

13:26:09 10   A.    Oh.  I believe there were seven total.

11   Q.    Pardon me?

12   A.    From the trust, I believe there's one.

13   Q.    When you say "from the trust," though, let me ask you

14   the question again.

13:26:25 15         The Navient Trust is the entity that claims the

16   plaintiff owes loans to it, right?

17   A.    Yes.

18   Q.    The other two Navient defendants do not claim the

19   plaintiff owes funds to them, right?

13:26:40 20   A.    The --

21   Q.    The corporation --

22   A.    The LLC --

23   Q.    The LLC, they do not claim the plaintiff owes funds to

24   them, right?

13:26:51 25   A.    Well, the LLC is the servicer, so they're responsible

1    for servicing the loan on behalf of the trust.

2    Q.    Would you answer my question?

3          There's three entities that have been referred to as

4    Navient defendants, but the Navient corporation and the

13:27:07  5    Navient LLC are not entities that claim the plaintiff owes

6    funds to them.

7          Is that correct?

8    A.    The owner of the loan would be the trust, but the LLC

9    collects on behalf of the trust.

13:27:23 10    Q.    The Navient Trust is the only Navient entity that

11    claims the plaintiff owes funds to it, right?

12          And they claim there are, what?  Six loans the

13    plaintiff owes to it?

14    A.    I believe there's only one loan.  The remainder of the

13:27:47 15    loans are through the Department of Education.

16    Q.    You're saying that the Navient Trust claims that the

17    plaintiff owes only one loan to it?

18    A.    I believe so.  And the rest are through the Department

19    of Education.

13:28:04 20    Q.    Well, I think that the Navient Trust has claimed in

21    the pleadings that there are six loans owed to it, and that

22    the Department of Education claims only two loans owed to

23    it.  So we're not talking --

24    A.    Yes.

13:28:26 25    Q.    -- about the Department of Education loans here.

Reinhart (Cross by Chinnock)

53

        1    We're just talking about the six, I believe, from the

        2    Navient Trust.

        3    A.    I'm sorry.  I may have it backwards then.  So the

        4    majority of the loans were from the trust.

13:28:41 5    Q.    From the trust?

        6    A.    Yes.

        7    Q.    But the Navient loans were not made directly by the

        8    trust, were they, to the plaintiff?

        9    A.    They were made pursuant to the Federal Family

13:28:56 10   Education Loan Program.

       11    Q.    No.  That's not my question.

       12          Not what they were made pursuant to.

       13          My question is, any of the loans that the Navient

       14    Trust claims are owed to it by the plaintiff, none of those

13:29:10 15   loans were made directly by the Navient Trust to the

       16    plaintiff.

       17          Isn't that correct?

       18    A.    Correct.

       19    Q.    So in order for Navient Trust to legitimately claim

13:29:26 20   they own these loans, they would have assignments from

       21    whatever entity made the loans, right?

       22    A.    I'm sorry.  I don't understand your question.

       23    Q.    Well, you've acknowledged that the Navient Trust did

       24    not make any direct loans to the plaintiff.

13:29:48 25         But nevertheless, Navient Trust is claiming she owes

1    these loans to it.

2         So there would be assignments and a chain of title

3    from the original lender in favor of the Navient Trust to

4    show that the Navient Trust owns these loans, which they are

13:30:14  5    claiming they do, right?

6    A.    Yes.

7    Q.    Do you have anywhere in your documents those

8    assignments from the original lender to the plaintiff; any

9    assignment documents assigning these loans to the Navient

13:30:33 10    Trust?

11    A.    No.  Not in the documents that we have today, no.

12    Q.    Pardon me?

13    A.    Not with the documents that we have today.

14    Q.    Have you seen any such assignments?

13:30:44 15    A.    Not personally.

16    Q.    Do you know if there's any in existence?

17    A.    Yes.

18    Q.    You do know?

19    A.    I would assume that we have them.  I'm not 100 percent

13:30:55 20    certain, though.

21    Q.    So you are saying that you believe there's assignments

22    in existence showing that the Navient Trust is the owner

23    today of these loans?

24    A.    Yes.

13:31:10 25    Q.    But you don't have them here?

1    A.    No.  The documents that we have today here are

2    pertaining to the issue which was jurisdiction.

3                    MR. MOORE:  Yeah, Your Honor.  I'm going to go

4    ahead and object to this line of questioning.  Counsel is

13:31:30  5    outside --

6                    THE COURT:  Why don't we go on.

7                    MR. CHINNOCK:  I didn't hear, Your Honor.

8                    THE COURT:  Go on.  Ask another question.

9    BY MR. CHINNOCK:

13:31:38  10    Q.    Okay.  Do you have any unredacted documents?

11          You've shown a lot of documents here with a lot of

12    redactions in them.

13          Do you have unredacted copies of these documents

14    you've testified to today?

13:31:52  15    A.    Not with us, no.

16    Q.    Okay.  Are they in existence?

17    A.    Yes.

18    Q.    Will you provide them to the Court and to the

19    plaintiff?

13:32:14  20    A.    They're redacted for privacy.  I don't really decide

21    what gets redacted and what doesn't get redacted.

22                    THE COURT:  I mean, does your client want to

23    waive that?  She's the one that's probably put at risk.

24                    MR. CHINNOCK:  I think that we'll strike all

13:32:31  25    of the documents shown that are redacted.

```
            1            THE COURT:  Okay.  I'll deny that.

            2        Are you requesting that he provide unredacted --

            3                MR. CHINNOCK:  Copies.

            4                THE COURT:  Yeah.  You want unredacted?

13:32:49    5    That's what you want?  You want your Social Security number

            6    and home --

            7                MR. CHINNOCK:  The plaintiff and the Court,

            8    yeah.

            9                THE COURT:  We file things publicly here.

13:33:01   10                MS. CHINNOCK:  Yeah, let's discuss that.

           11                MR. CHINNOCK:  Well, we can -- with the

           12    exception of her Social Security number, we should be able

           13    to see unredacted copies because all of these have a lot of

           14    redactions.

13:33:14   15                MR. MOORE:  There's also bank account

           16    information, as well as her account number, addresses.

           17    There's some nonpublic information in there that's highly

           18    sensitive.

           19                MS. CHINNOCK:  Can I confer with him?

13:33:26   20                THE COURT:  Yeah.  You better.

           21                    (Pause in proceedings.)

           22                MR. CHINNOCK:  We're addressing the redacted

           23    copies.  We're asking for unredacted copies to be submitted,

           24    not in the record, but to the plaintiff.  You can redact

13:34:18   25    Social Security numbers and bank accounts.
```

57

            1          THE COURT:  Well, you can deal with that.

            2   File a motion to produce or a motion for production.  But

            3   let's go on with the questioning.

            4   BY MR. CHINNOCK:

13:34:32    5   Q.   Okay.  I've noticed that the documents that you've

            6   testified to today do not contain, I don't believe, any

            7   signature of the plaintiff.

            8   A.   I'd have to review them, but I believe some of them

            9   had her --

13:34:50   10   Q.   Well, let's review them.  We reviewed them once.  We

           11   can do it again.

           12   A.   Otherwise, the signature on file would be an

           13   electronic signature.

           14   Q.   Are you guessing or are you telling us the truth or

13:35:02   15   what here?

           16          THE COURT:  Well, the documents speak for

           17   themselves.

           18       Give him the exhibits if he wants to take a look at

           19   them.

13:35:46   20       Okay.  What's the question?

           21          MR. CHINNOCK:  Well, I can't see the exhibit

           22   here.

           23          DEPUTY CLERK:  Oh, I'm sorry.  Okay.

           24   BY MR. CHINNOCK:

13:36:01   25   Q.   Well, I will go through.  I'm not sure where these

Reinhart (Cross by Chinnock)

58

1    would be --

2              THE COURT:  They'll speak for themselves, but

3    if you have a particular question, go to it.  But I'm not

4    going to -- we've got kind of some time limits that we are

13:36:14  5    trying to keep with.

6              MR. CHINNOCK:  Well, I'm asking him to show

7    the signature of the plaintiff on any of these documents.

8    We got Exhibit A.

9    BY MR. CHINNOCK:

13:36:38  10    Q.    Okay.  So we see on Exhibit A, the first page, there

11    is a signature dated November 5, 2003, right?

12    A.    Can you move the document up, please.

13              Yes.  So at the bottom, her signature is on there.

14    Q.    And that is not -- that is not a -- this is an

13:37:12  15    application, right?

16    A.    It's an application and promissory note.

17    Q.    Okay.  This application is not from the plaintiff to

18    the student -- or the Navient Trust, right?

19    A.    I'm sorry.  I don't understand your question.

13:37:30  20    Q.    Well, you acknowledge that none of these loans were

21    made directly by the Navient Trust, right?

22    A.    Correct.

23    Q.    And this confirms that for this particular Exhibit A,

24    the signature of the plaintiff is not a signature making an

13:37:53  25    application to or obtaining a loan from the Navient Trust.

Reinhart (Cross by Chinnock)                    59

1    A.    No.

2    Q.    No --

3    A.    It's not for the trust, but it is for a loan.  It's a

4    loan application.

13:38:10  5    Q.    It's not to the trust, right?

6    A.    But it is a loan application for --

7    Q.    Okay.  So it was made to another entity, perhaps,

8    right?

9    A.    Correct.

13:38:22  10    Q.    But you have no assignment --

11          MR. MOORE:  Object, again, to this line of

12    questioning.  The documents speak for themselves, and the

13    witness has already testified as to the contents of the

14    documents.

13:38:30  15          THE COURT:  Well, I think they do speak for

16    themselves.

17          Go on with a question.  We're not really talking about

18    whether there was a proper assignment.  We're talking about

19    whether the Court has jurisdiction.

13:38:40  20          So . . .

21    BY MR. CHINNOCK:

22    Q.    And the next page on Exhibit A in which there is an

23    application is the page before you now with a bunch of

24    redactions on it.

13:39:15  25          And there is no signature on there from the plaintiff?

Reinhart (Cross by Chinnock)

60

```
            1    A.    Yes, there is.

            2    Q.    Where is that?

            3    A.    The bottom left-hand corner, there's her electronic

            4    signature.

13:39:32    5    Q.    An electronic signature?

            6    A.    Yes.

            7    Q.    You mean somebody typed her name in, and that's what

            8    you're saying is an electronic signature?

            9    A.    Correct.

13:39:45   10    Q.    Do you know that she typed her name in there?

           11          I mean, what shows that that is her electronic

           12    signature on this document?

           13    A.    In order to fill out an application, someone would

           14    have to have personal knowledge of all of her sensitive

13:40:05   15    information, such as her Social Security number, date of

           16    birth, residence.  All of these items were cross-checked to

           17    be sure to be accurate.

           18    Q.    So that's your opinion?

           19               MR. MOORE:  Your Honor, I'm going to renew the

13:40:16   20    objection that these documents speak for themselves.

           21               THE COURT:  Yeah.  I think they do.

           22          Who is Teresa Chinnock?

           23               MS. CHINNOCK:  That's my mother.

           24    BY MR. CHINNOCK:

13:40:30   25    Q.    Okay.  Again, this document does not show any
```

           1    relationship between the plaintiff and Navient Trust, does

           2    it?

           3                    MR. MOORE:  I'm going to renew the objection,

           4    Your Honor.

13:40:42   5                    THE COURT:  Sustained.

           6         Sustained.  Go on to something else.

           7         I sustained the objection.  Go on to another question.

           8    BY MR. CHINNOCK:

           9    Q.    So this is a third similar document, and that's all

13:41:22  10    the similar documents that you call applications and

          11    promissory notes, right?  In Exhibit A?  Because I'm not

          12    familiar with Exhibit A.

          13         Is this the last one, or are there more?

          14    A.    I believe there's another one, but this is a little

13:41:37  15    bit different.  This is for the Department of Education.

          16    Q.    All right.  So it's for the Department of Education?

          17    A.    Yes.

          18    Q.    This does not -- this third exhibit in Exhibit A is

          19    not related to the loans that the Navient Trust claims is

13:41:59  20    owed to them, right?

          21                    MR. MOORE:  Your Honor, I'm going to renew the

          22    objection.

          23                    THE COURT:  Sustained.

          24                    MR. CHINNOCK:  I couldn't hear, Your Honor.

13:42:07  25                    THE COURT:  I sustained the objection.

```
              1          MR. CHINNOCK:  Okay.

              2     BY MR. CHINNOCK:

              3     Q.    Is that it, or are there others?  Because the pages

              4     are hard to turn here.

13:42:26      5          How many documents are there that are applications in

              6     Exhibit A?

              7          Is this the fourth one?  Is this the last one?  The

              8     one that's before you.

              9     A.    I believe there may be one more, which is a

13:42:40     10     consolidation.  I'm not sure.  We can page through them to

             11     see if there's another one.

             12     Q.    Okay.  So this fourth document, which is a file of

             13     March 21, 2019, that is not related in any way to a loan

             14     that the plaintiff owes to Navient Trust, right?

13:43:07     15          MR. MOORE:  Objection.  Renewed.

             16          THE COURT:  Sustained.

             17     BY MR. CHINNOCK:

             18     Q.    Are there any others in here, because it's tough to

             19     hit every page here.

13:43:25     20          MR. MOORE:  I'm going to renew the objection,

             21     Your Honor, that these documents speak for themselves.

             22          THE COURT:  Just answer the question.

             23          Are there any other pages that you know of?

             24          THE WITNESS:  All of the applications are

13:43:37     25     included in this packet.
```

BY MR. CHINNOCK:

Q.    So it looks like there's a fifth one, I think I found

here, which was filed as Document Number 25-1.

     This document also does not relate in any manner to

13:44:01  the loans that Navient Trust claims are owed to it by the

plaintiff, correct?

A.    These loans are through the Department of Education,

so, no.

Q.    I didn't hear your answer.

13:44:15  A.    These loans are through the Department of Education,

so, no.

Q.    No.  My question is: This document, on its face, does

not relate in any manner to any of the loans that the

Navient Trust claims the plaintiff owes to it, right?

13:44:33  A.    Correct.  These are direct loans through the

Department of Education.

Q.    So this is another situation that none of these

alleged loans by the Navient Trust were made directly from

the Navient Trust to the plaintiff, right?

13:44:47                 MR. MOORE:  Your Honor, I'm going to object.

                THE COURT:  Sustained.

BY MR. CHINNOCK:

Q.    Are there any assignment documents showing that the

Navient Trust owns these loans that it claims the plaintiff

13:45:02  owes to it?

1          Are there any assignment documents to prove that they

2     own these loans?

3                    MR. MOORE:  Objection, Your Honor.

4                    THE COURT:  Sustained.

13:45:23  5              MR. CHINNOCK:  I have no further questions.

6                    THE COURT:  Okay.  Do you have anything else?

7                    MR. MOORE:  No. No further questions,

8     Your Honor.

9                    THE COURT:  Do you have any, Mr. Rokakis?

13:45:32 10              MR. ROKAKIS:  No, Your Honor.

11                    THE COURT:  Do you have any final argument on

12     behalf of the plaintiff?

13          Or do you have any other witnesses you wish to call?

14                    MR. MOORE:  No, Your Honor.

13:45:44 15              THE COURT:  I'm sorry.  And I should ask, do

16     you wish to move the admission of any exhibits?

17                    MR. MOORE:  Yes, Your Honor.  The admissions

18     of Exhibits A through D.

19                    THE COURT:  Okay.  Is there objection to that?

13:45:55 20              MR. CHINNOCK:  Yes, Your Honor.

21                    THE COURT:  I'll overrule the objection.  I'll

22     receive the exhibits.

23                    MR. CHINNOCK:  Can we give our basis of the

24     objection?

13:46:00 25              THE COURT:  Yeah.

1    MR. CHINNOCK:  Well, the main basis is that

2    there's been an admission here that none of these documents

3    relate in any manner to the loans that the Navient Trust

4    claims the plaintiff owes to it.  They don't relate to the

13:46:18  5    issue at hand here as to whether these -- the Navient Trust

6    owns these.

7                  THE COURT:  Okay.  But I'm trying to decide

8    whether I have personal jurisdiction in this case.  I'm not

9    deciding the merits of the case.  You may win or you may

13:46:38 10    lose on that, but that's not what we're -- the hearing is

11    about.

12         The hearing is about whether there was sufficient

13    contacts in this case with the state of Ohio to give this

14    Court jurisdiction.  And whether or not there was a proper

13:46:54 15    assignment of the loan I don't think goes to that issue of

16    personal jurisdiction.

17         So that's why I sustained the objection.

18         You can step down.

19         And I will receive A through D.

13:47:07 20         With that, do you rest?

21                  MR. CHINNOCK:  Sir, I can't hear you,

22    Your Honor.

23                  THE COURT:  I asked if he rested.

24                  MR. MOORE:  We do, Your Honor.

13:47:15 25                  MR. CHINNOCK:  Yes.

1          THE COURT:  And do you have anything else,

2   Mr. Rokakis?

3              MR. ROKAKIS:  No, Your Honor.

4              THE COURT:  Okay.  Do you have any argument?

13:47:20 5      What contacts are there with Ohio that give this Court

6   jurisdiction?

7              MR. CHINNOCK:  You're honor, I would simply --

8              THE REPORTER:  Excuse me.  Is your microphone

9   muted?

13:47:24 10              MR. CHINNOCK:  Oh, I'm sorry.

11      We have no further evidence on that point, Your Honor.

12              THE COURT:  I was asking if you had any

13   argument.

14      What contacts does Ohio have with this that would

13:47:44 15   support jurisdiction?

16              MR. CHINNOCK:  We will rest on the evidence

17   that's in our briefs.

18              THE COURT:  Okay.

19              MR. CHINNOCK:  And we would ask the Court if

13:47:51 20   we would have -- if the Court would permit a ten-day period

21   for post-hearing briefs.

22              THE COURT:  Yeah, no.

23          Do you have any argument?

24              MR. MOORE:  Yes, Your Honor.  Thank you.

13:48:03 25      Just want to suggest, you know, as you mentioned, you

1    know, that the purpose of today's hearing was to determine

2    whether there was any evidence to suggest that the Court had

3    personal jurisdiction.

4         And although it was a bit of a laborious process, I

13:48:18  5    think what the evidence shows today, it confirms what has

6    already been submitted by the parties, that the Court does

7    not have personal jurisdiction in this case.

8         The Navient defendants have no contacts with Ohio, and

9    as it relates to the Navient defendants, there is no

13:48:33 10    connection between plaintiff, herself, and Ohio.

11         She did not attend secondary education in Ohio.  She

12    has resided in other states on the West Coast other than

13    Ohio since at least leaving for her undergraduate education

14    and does not have any contacts with Ohio whatsoever.

13:48:54 15         As a result, we would argue that there is no -- the

16    Court does not have personal jurisdiction in this matter.

17    And I will point out that the plaintiffs have suggested as

18    much in their most recent filings.

19         Thank you.

13:49:08 20              MR. CHINNOCK:  Your Honor, when the

21    plaintiff's counsel states that we rest on our -- the

22    evidence in our briefs, we will point out that we filed a

23    prehearing brief which contains evidence that the

24    parties -- all the parties have made stipulations, judicial

13:49:30 25    admissions and statements of counsel, that there is no

1    subject matter jurisdiction or personal jurisdiction.  So we

2    would ask the Court to consider that uncontroverted

3    evidence.

4                THE COURT:  Okay.  I'm not sure that's true,

13:49:45  5    but there's a difference between subject matter jurisdiction

6    and personal jurisdiction.

7         And challenge to subject matter jurisdiction is

8    determined separately from personal jurisdiction.

9                MR. CHINNOCK:  Sure.

13:50:01 10                THE COURT:  Okay.  Thanks, everyone.  And

11   we'll adjourn.

12                MR. CHINNOCK:  Your Honor, I'd like to proffer

13   a portion of my opening statement into the record, proffer

14   it.

13:50:15 15                THE COURT:  We have a court reporter.  Proffer

16   an opening statement?  Presumptively it's part of the

17   record.

18        I've never heard of somebody saying, I

19   proffer -- that's like saying I proffer questions and

13:50:32 20   answers from a witness.  If you've asked the question and

21   the witness has given the answer, it is evidence.

22                MR. CHINNOCK:  Well, Your Honor, what I'm

23   pointing out is that I was not able to complete my opening

24   statement.  I'd like to simply put on the record the entire

13:50:49 25   opening statement.

1          THE COURT:  Okay.

2          MR. CHINNOCK:  Is that all right?

3          THE COURT:  Opening statements are an intent

4     to give the factfinder or the decider an overview.  They're

13:50:58  5     not evidence themselves.

6          So we'll stand adjourned.

7          MR. CHINNOCK:  So that's a denial?

8          THE COURT:  I didn't stop you from making

9     opening statement, but beyond that, the opening statement is

13:51:13 10     not evidence.

11          MR. CHINNOCK:  Right.  So I understand you're

12     denying the request.

13                    - - -

14          (Proceedings adjourned at 1:51 p.m.)

15

16               **C E R T I F I C A T E**

17

18     I certify that the foregoing is a correct transcript

19     from the record of proceedings in the above-entitled matter.

20

21     */s/ Donnalee Cotone            2nd of May, 2019*
       DONNALEE COTONE, RMR, CRR, CRC              DATE
22     Realtime Systems Administrator

23

24

25